**FAY, Admr., et al., Appellants,**

v.

**MOTORISTS INSURANCE COMPANY, Appellee.**

[Cite as *Fay v. Motorists Ins. Co.* (1992), 80 Ohio App.3d 63.]

Court of Appeals of Ohio,
Geauga County.

No. 91–G–1649.

Decided May 18, 1992.

*William T. Doyle* and *Kenneth R. Callahan,* for appellants.

*David E. Lowe,* for appellee.

---

FORD, Presiding Judge.

This appeal derives from the Geauga County Court of Common Pleas. Appellant, Howard B. Fay III, is the administrator of the estate of Barbara Barber. Barber's son Michael Fay was killed in an automobile accident by an uninsured motorist, on May 4, 1988. After his death, Barber sought compensation through her uninsured motorist policy, which she possessed with appellee, Motorists Insurance Company. On December 25, 1989, Barber, herself, died. In April 1990, appellant, on behalf of Barber's estate, filed a

complaint for declaratory judgment requesting that the court determine that Barber was entitled to coverage for the wrongful death of her son Michael.

At trial appellant attempted to recover damages under the uninsured motorist provision of Barber's insurance policy by asserting two separate reasons for the claim: first, appellant contended that Barber's estate was entitled to proceeds under the policy because Michael Fay was a resident in her household at the time of the accident, and therefore Michael was insured under Barber's policy; and, second, that irrespective of the first claim, the estate was entitled to recover under the policy for presumed damages which Barber, herself, sustained as a result of the wrongful death of Michael. The trial court found in favor of appellee, and appellant now appeals, raising the following assignments of error:

"1. The trial court erred in finding that the defendant-insurer was not liable to the plaintiff under the uninsured motorist provision of the policy.

"2. The trial court erred in determining that the decedent was not a 'resident' of the household of the appellant."

■ Appellant first asserts that Barber's estate is entitled to recover damages for her loss resulting from the wrongful death of her son Michael. The basis for this claim involves the portion of the policy which provides that:

"We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an accident. * * *

" 'Bodily injury' means bodily harm, sickness or disease, including death that results."

In *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555, the Ohio Supreme Court construed an uninsured motorist provision which contained substantially similar language to that in the case at bar. This court is mindful of the fact that several appellate courts have rendered what appear to be conflicting decisions regarding the applicability of *Sexton, supra,* to cases which are factually similar to the instant case. Therefore, this court deems it necessary to conduct its own in-depth analysis of *Sexton* and its relevance to the case *sub judice.*

In *Sexton, supra,* a minor child was killed by an uninsured motorist. At the time of the accident, the minor did not live with the father, Sexton. However, Sexton was financially responsible for the support of the child, which included the medical and funeral expenses related to his minor daughter's injuries and death. Sexton filed a claim under the uninsured motorist provision of his automobile policy to recover the damages which he suffered as a result of his daughter's wrongful death.

In order to thoroughly analyze the import of the holding in *Sexton*, it is important to stress the argument State Farm presented in defense of its position regarding the denial of recovery. The basis of State Farm's position was set forth in a footnote, as follows:

"State Farm admits that Sexton qualifies as an insured under its definition (1). Under the terms of the policy, he could not recover because he did not sustain bodily injury. Laurie sustained bodily injury but was not an insured under definition (1) because she was not a resident in Sexton's household. State Farm contends that definition (3) provides for the recovery of derivative or consequential damages to others, but only if the bodily injury was actually sustained by an insured. Because Laurie was not insured and could not recover herself, State Farm contends that this provision prevents Sexton from claiming consequential damages." *Sexton, supra,* 69 Ohio St.2d at 433, 23 O.O.3d at 386, 433 N.E.2d at 558, at fn. 1.

Since the foregoing paragraph reveals to this court that the *Sexton* Court was clearly aware of the argument put forth by State Farm, there is simply no basis for concluding that *Sexton* is not applicable to this factual scenario. Furthermore, based on the *Sexton* court's analysis, it is evident that the Supreme Court intended its holding to dictate that a person who is insured but does not suffer bodily injury or death may be entitled to recover damages from his own insurer for the wrongful death of a relative even though the deceased person could not recover under the same policy because she is not an insured within the meaning of the contract. The court's intent is plainly noted in a footnote which states that:

"Sexton's financial loss can be termed direct damages. Pursuant to R.C. 3937.18, the insured's right to recover loss depends on his legal right to recover the damages. *It is independent of the injured person's status as a resident relative or the injured person's own right to coverage under the policy.*" (Emphasis added.) *Id.,* 69 Ohio St.2d at 435, 23 O.O.3d at 387, 433 N.E.2d at 559, at fn. 3.

The court further specified that the critical language in the policy was that portion which stated that coverage is " 'for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom.' Thus, according to the statute, the question is whether the insured is legally entitled to recover damages sustained because of injury or death caused by an uninsured motorist." *Id.,* 69 Ohio St.2d at 434, 23 O.O.3d at 387, 433 N.E.2d at 558.

 In order to determine whether a person falls within the meaning of the uninsured motorist statute, the *Sexton* Court devised a four-part test: first,

there must be an insured; second, the insured must be entitled to recover damages sustained because of injury or death caused by an uninsured motorist; third, the damages must result from injury, sickness, disease or death; and fourth, the tortfeasor must be the owner or operator of an uninsured motor vehicle.

With the exception of the second requirement, the questions are easily answered and seldom are points of contention. The second prong, however, requires a more detailed examination and analysis. The *Sexton* court expounded on this prong and expressed the following view:

"Although the statute does not indicate who must have sustained the bodily injury, it does not specify that it be the insured. Because the statute should be construed liberally, *Curran v. State Automobile Mut. Ins. Co.* (1971), 25 Ohio St.2d 33, 38 [54 O.O.2d 166, 168, 266 N.E.2d 566, 569], we will not add that limitation. The pertinent language of the statute requires that the insured be legally entitled to recover damages because of bodily injury. Therefore, the question here is whether the insured himself is entitled to recover damages." *Id.,* 69 Ohio St.2d at 434–435, 23 O.O.3d at 387, 433 N.E.2d at 558–559.

Referring to R.C. 2125.02 and 2125.03, the wrongful death statute which was in effect at that time, the court indicated it "provides a cause of action for recovery of damages when death is caused by, *inter alia,* neglect. In a wrongful death action, the damages recoverable are intended to compensate for the pecuniary injury resulting from the death and reasonable funeral expenses." (Footnotes omitted.) *Id.* at 435, 23 O.O.3d at 387, 433 N.E.2d at 559. Thus, the court held that "under the wrongful death statutes, Sexton would have a cause of action for recovery of his pecuniary damages against the negligent motorist. This satisfies the requirement of R.C. 3937.18 that he be legally entitled to recover damages." *Id.*

In applying the four-part test to the case at bar, it appears that as in *Sexton,* the only point of contention involves the second component of the test. Similarly, appellant here is entitled to recover as a parent under the wrongful death statute, in effect at the time, for the wrongful death of her son Michael. R.C. 2125.02(A)(1) provides that:

"An action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent."

Having previously concluded that the purpose of the uninsured motorist statute is to protect the insured from loss and provide for recovery of

damages, the Ohio Supreme Court has made it abundantly clear that the General Assembly's intent in requiring insurance companies to provide uninsured motorist coverage is that recovery be had for wrongful death. *Sexton, supra,* at 436, 23 O.O.3d at 388, 433 N.E.2d at 559; *In re Estate of Reeck* (1986), 21 Ohio St.3d 126, 21 OBR 429, 488 N.E.2d 195.

Therefore, the only question is whether appellant is entitled to recover wrongful death damages under the facts of this case. In responding to this inquiry, we note that we are mindful of appellee's position that Barber has already recovered under the wrongful death statute and is therefore prevented from recovering again. Appellee's assertion is based on the portion of the record which demonstrates that the decedent's father owned an insurance policy with Grange Insurance, and he too filed a claim against his insurer on the basis that the decedent was a resident of the father's household, and therefore an "insured" within the meaning of the policy. Since the decedent qualified as an insured, the wrongful death claim had to be brought by the personal representative of the decedent on behalf of the latter's estate, and, consequently, the proceeds of the settlement from the Grange policy had to be distributed according to R.C. 2125.02 and 2125.03, the wrongful death statute, pursuant to *In re Estate of Reeck, supra,* in which the court held in the syllabus that "[i]n the case of the death of an insured, the settlement proceeds under an uninsured motorist provision are to be distributed among those persons who are entitled by statute to bring a wrongful death action." Accordingly, the decedent's mother, Barber, received $10,000 as her share of the wrongful death proceeds from the father's policy.

Citing *Hill v. State Farm Mut. Auto. Ins. Co.* (Nov. 10, 1988), Lucas App. No. L–87–382, unreported, 1988 WL 121287, appellee maintains that since Barber has already received damages under the wrongful death statute she is not entitled to recover again under the same statute for the same decedent. We conclude that *Hill, supra,* is neither persuasive nor controlling. While the facts in *Hill* are similar to those in the case at bar, the *Hill* court merely stated that while the legal principle in *Sexton, supra,* was applicable, the factual scenario in *Hill* was distinguishable from that in *Sexton,* because in the latter case, the court relied heavily on the fact that the insured was financially responsible for the decedent and incurred expenses as a result of the death. The *Hill* court concluded that since the insured in its case was not financially responsible for the decedent, she was not entitled to seek recovery from her insurance carrier. Therefore, citing no authority, the *Hill* court broadly held that the action the insured sought to maintain was too remote from the intent of the legislators in enacting the uninsured motorist statute. *Hill, supra.*

It should be emphasized that in *Sexton*, there was no mention of any other type of recovery which may have been received by the father. Since the father was liable for funeral expenses, it appears unlikely that there were other wrongful death actions filed by others for the wrongful death of the minor. Otherwise, the proceeds from such settlement would have paid for the funeral expenses. Because the holding reached in *Sexton* focused heavily on the fact that the father suffered a pecuniary loss and that the purpose of the uninsured motorist statute is to protect from losses and provide for recovery, it is obvious that the court predicated its holding, in part, on the items of damage permitted under the then-existing wrongful death statute and the evidence as to the total amount of funeral expenses for which the father was liable. To conclude as *Hill* did that the *Sexton* rationale should be so inflexibly construed that the logic of its holding would not be equally applicable to the present wrongful death statute and its expanded concept of damages would, in our opinion, emasculate its message.

It is our view that the thrust of the *Sexton* opinion clearly provides for an independent right of recovery, separate from the injured person's status as a resident relative or the injured person's right to coverage under the policy. See *Motorists Mut. Ins. Co. v. Speck* (1977), 59 Ohio App.2d 224, 13 O.O.3d 239, 393 N.E.2d 500, cited with approval and followed in *Sexton, supra.*

██ Thus, we hold that absent binding precedent to the contrary, Barber's estate is entitled to recover from her insurer even though, as intimated by appellee, there would be recovery from more than one source. Insurance laws provide insurance companies with a viable remedy by way of the antistacking statute, R.C. 3937.18(G). *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 10 OBR 497, 462 N.E.2d 403.

Accordingly, since the insurer here is the drafter of the contract, and failed to avail itself of the antistacking provision, the insurer is at its own peril. See, generally, *Munchick v. Fid. & Cas. Co.* (1965), 2 Ohio St.2d 303, 31 O.O.2d 569, 209 N.E.2d 167.

Consequently, we adopt the rationale of those appellate courts which hold that *Sexton, supra,* is applicable, particularly since the type of damages that may be recovered because of the wrongful death of another have been expanded since *Sexton.* This does not detract from the legal principle set forth in *Sexton* that such damages are recoverable because of wrongful death caused by the negligence of an uninsured motorist. Thus, such damages for death are within the contemplation of R.C. 3937.18(A) and an insurance policy issued thereunder. *Barr v. Ins. Co. of N. Am.* (1991), 72 Ohio App.3d 595, 595 N.E.2d 531; *Ross v. Nationwide Mut. Ins. Co.* (Sept. 27, 1990), Franklin App. No. 90AP–165, unreported, 1990 WL 140549; *Devericks v. Royal Ins. Co.*

(Jan. 29, 1990), Stark App. No. CA–7800, unreported, 1990 WL 6231. Accordingly, the assignment is with merit.

■ In appellant's second assignment, he maintains that Barber's estate is entitled to recover on the basis that the deceased was an insured under the terms of Barber's policy, which defines "insured" as a family member who is related to the insured and who is a resident in the insured's household. Appellant maintains that the deceased was a resident of Barber's household.

The following provisions of the insurance contract are pertinent to our discussion regarding this assignment of error:

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

" * * *

" 'Covered person' as used in this Part means: 1. You or any family member. * * * 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household."

With regard to whether Michael Fay was a member of Barber's household, appellant concedes that at the time of Michael Fay's death he primarily lived with his father. However, appellant asserts that this fact does not preclude the court from finding that Michael was also a resident of her household. Appellant maintains that several courts have begun to recognize a very broad interpretation of 'resident' under the uninsured motorist provisions of an automobile policy. The cases cited by appellant, *Farmers Ins. of Columbus, Inc. v. Taylor* (1987), 39 Ohio App.3d 68, 528 N.E.2d 968, and *Snedegar v. Midwestern Indemn. Co.* (1988), 44 Ohio App.3d 64, 541 N.E.2d 90, both involved a minor child who lived with the custodial parent the majority of the time and lived with the noncustodial parent regularly for some duration.

In *Midwestern Indemn. Co., supra,* the court relied on *Shear v. W. Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 11 OBR 478, 464 N.E.2d 545, in which the Ohio Supreme Court stressed that the nontemporary status of the living arrangement was an important factor in determining whether a person was a member of an insured's household. In *Midwestern Indemn. Co., supra,* the court also adopted and reaffirmed the holding in *Taylor, supra,* which emphasized that "the phrase 'resident of your household' refers to one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor." *Taylor, supra,* 39 Ohio App.3d at 70, 528 N.E.2d at 969.

In the case *sub judice*, the record demonstrates that the only living witnesses at the time of trial were the deceased's father, brother and girlfriend. The father and brother testified at trial. The record substantiated that Michael, the deceased, an adult, stopped living in Barber's household in the latter part of 1986, and lived various places thereafter. From the fall of 1987 until his death in May 1988, Michael was a resident in his father's household: Michael slept on his father's couch; his mailing address was at his father's home; he kept his clothes there; and he had a key to his father's home. Moreover, Michael's father, Mr. Fay, represented and established to his own insurance company that Michael was a resident in the father's household at the time of his death, thus enabling the father to recover under his own uninsured motorist coverage. Fay testified that Michael had been living with him since fall 1987, but that he did not come home every night and would sometimes be gone for a day or two. Mr. Fay also stated that "I can't honestly say how much time he [Michael] spent there [his mother's house] other than maybe two or three days a month or something. I really don't know." Further, the father admitted that he could not say that as "an absolute fact" that on the occasions that Michael did not come home he spent those nights at his mother's house.

Michael's brother Howard testified that he knew for sure that Michael spent the night at his mother's "a couple times," while he was living with the father; however, as to any other nights that Michael did not return to his father's home he could only speculate that Michael stayed at his mother's house.

In addition to the foregoing testimony, the parties stipulated to the admission of the deposition of Vicki Barr, who failed to appear at trial. Barr was Michael's girlfriend during the years in question and up until the time of his death. In the deposition testimony, Barr stated that the deceased did not live with his mother at any time from November 1987 until the date of his death. Based on the foregoing, the record reveals that the only scintilla of evidence regarding the status of Michael Fay's residence which was adduced at trial was from the deceased's brother Howard, who could only testify that Michael spent the night at his mother's house a couple of times during the period of time that he resided at his father's home. The facts here are simply not analogous to the facts in the cases cited by appellant, since there was little, if any, evidence which substantiated the assertion that, within the preceding year up to appellant's death, Michael had resided with his mother for a period of some duration or regularity, as was the case in *Taylor* and *Midwestern, supra*.

Therefore, there was competent credible evidence from which the trial court could conclude that the deceased was not a resident in Barber's household.

See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Thus, the assignment lacks merit.

Based on the foregoing analysis, the judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

Cox and Hendrickson, JJ., concur.

Edward A. Cox, J., of the Seventh Appellate District, and William R. Hendrickson, J., retired, of the Twelfth Appellate District, sitting by assignment.