**PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Appellant,**

v.

**KOBY et al., Appellees.**

[Cite as *Prudential Prop. & Cas. Ins. Co. v. Koby* (1997), 124 Ohio App.3d 174.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 97–T–0039.

Decided Dec. 8, 1997.

Philip J. Weaver, Jr., for appellant.

Robert J. Vesmas, for appellee Edgar W. Koby, Jr.

Christopher J. Shaker, for appellees Thomas G. Butcher, Beverly Butcher, Stephanie Butcher, Sally Butcher, and Stacey Butcher.

---

FORD, Presiding Judge.

This is an accelerated calendar appeal from the Trumbull County Court of Common Pleas. Appellant, Prudential Property and Casualty Insurance Company, appeals from a judgment entry granting summary judgment for appellees, Edgar W. Koby, Jr., ("Koby"), Thomas G. Butcher ("Butcher"), Beverly Butcher ("Beverly"), Stephanie Butcher ("Stephanie"), Sally Butcher ("Sally"), and Stacey Butcher ("Stacey"), in a declaratory judgment action.[1]

Koby is a thirty-two year-old captain in the United States Army, stationed at Fort Hood in Killeen, Texas. On December 28, 1994, Koby was visiting his parents' home at 9660 Howland–Springs Road, Trumbull County, Howland Township, Ohio. While he was visiting, he was target shooting in his parents' backyard when he fired a gunshot into the woods which accidentally struck and injured Butcher.

On September 22, 1995, Butcher, individually, and Beverly, in her own behalf and as next friend of the couple's minor children, filed a complaint against Koby

---

1. Beverly is Butcher's wife, and Stephanie, Sally, and Stacey are Butcher's minor children.

and his parents, Edgar W. Koby, Sr. and Patricia Ann Koby, seeking damages.[2] Koby sought defense and indemnification from appellant, the issuer of a homeowner's insurance policy on his parent's home. The policy provides insurance coverage for the insured and "residents of your household" including the insured's relatives. Appellant declined to defend and indemnify on the ground that Koby is not a resident in the household of his parents, but instead has his own residence in Texas, where he is stationed as a career officer in the military.

On December 7, 1995, appellant filed a complaint for declaratory judgment, naming Koby as the defendant, seeking a declaration that it had no duty to defend or indemnify Koby.[3] Appellant filed a motion to consolidate case No. 95CV1494, the personal injury action, and case No. 95CV2027, the declaratory judgment action, on February 20, 1996.[4] An amended complaint, naming Butcher, Beverly, Stephanie, Sally, and Stacey as additional defendants, was filed on April 17, 1996.

Appellant filed a motion for summary judgment on June 28, 1996, which was overruled by the trial court on November 22, 1996. In overruling appellant's summary judgment motion, the trial court determined that there was a substantial indication that Koby considered 9660 Howland–Springs Road to be his residence, based on the fact that he paid taxes in Ohio, possessed an Ohio driver's license, voted in Ohio, and used that address as his residence address when requested.

Appellees Butcher, Beverly, and the minor children by and through Beverly, filed their motion for summary judgment on December 20, 1996. In a judgment entry filed on January 29, 1997, the trial court granted summary judgment on the issue of insurance coverage, determining that Koby is an insured entitled to defense and indemnification under the subject policy. The court also declared its judgment to be a final appealable order, stated that there was no just cause for delay, and ordered that the consolidated cause proceed to trial on the issue of damages.

Appellant filed a timely notice of appeal, and raises a single assignment of error:

"The trial court erred to the prejudice of [appellant] in overruling its motion for summary judgment and granting the motion for summary judgment of [appellees]."

---

2. Trumbull C.P. No. 95CV1494, the personal injury action.

3. Trumbull C.P. No. 95CV2027, the declaratory judgment action.

4. The cases were subsequently consolidated by the trial court, as reflected in the trial court's judgment entry dated January 29, 1997.

█ The decisive issue in this case is whether, for insurance coverage purposes, Koby, a thirty-two year-old career Army officer residing in Killeen, Texas, is also a resident of his parents' home in Howland Township, Ohio.

█ A reviewing court "is required to view the evidence most strongly in favor of the party opposing the motion for summary judgment." *Wood v. McQueen* (Sept. 21, 1995), Cuyahoga App. No. 68472, unreported, at 7, 1995 WL 558925.

Preliminarily, we observe that the term "resident" is not defined in the subject insurance contract. In *Prudential Property & Cas. Ins. Co. v. LaMarr* (1993), 92 Ohio App.3d 331, 334, 635 N.E.2d 63, 65, the court stated:

"When construing undefined words in an insurance policy, a court must give the words used in the contract their plain and ordinary meaning. *State Farm Auto. Ins. Co. v. Rose* (1991), 61 Ohio St.3d 528, 531, 575 N.E.2d 459, 461. Black's Law Dictionary (5 Ed.Rev.1979) defines 'resident' as 'a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration.'"

█ "[T]he word 'resident' as used in the phrase 'resident of your household' refers to one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor." *Farmers Ins. of Columbus, Inc. v. Taylor* (1987), 39 Ohio App.3d 68, 70, 528 N.E.2d 968, 969.

"'[T]he word "residing" is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent abode[.]'" *Continental Ins. Co. v. McKain* (E.D.Pa.1993), 820 F.Supp. 890, 894–895. Another court has opined:

"[T]he words 'resident,' 'residence' and 'residing' have no precise, technical and fixed meaning applicable to all cases. 'Residence' has many shades of meaning, from mere temporary presence to the most permanent abode. It is difficult to give an exact or even satisfactory definition of the term 'resident,' as the term is flexible, elastic, slippery and somewhat ambiguous. * * * Definitions of 'residence' include 'a place of abode for more than a temporary period of time' and 'a permanent and established home' and the definitions range between these two extremes. This being the case, our courts have held that such terms should be given the broadest construction and that all who may be included, by any reasonable construction of such terms, within the coverage of an insurance policy using such terms, should be given its protection." (Citations omitted.) *Great Am. Ins. Co. v. Allstate Ins. Co.* (N.C.App.1986), 78 N.C.App. 653, 656, 338 S.E.2d 145, 147.

The court in *DeMatteis v. Am. Community Mut. Ins. Co.* (1992), 84 Ohio App.3d 459, 462, 616 N.E.2d 1208, 1210, stated:

"It is well settled that, 'where the meaning of language used in a contract of insurance is doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured.' *Blohm v. Cincinnati Ins. Co.* (1988), 39 Ohio St.3d 63, 66, 529 N.E.2d 433, 436. This is particularly true with exemptions and exclusions which are not expressed plainly and without ambiguity. *New Amsterdam Cas. Co. v. Johnson* (1914), 91 Ohio St. 155, 157–158, 110 N.E. 475, 475–476. It is, therefore, presumed that 'that which is not clearly excluded from the contract is included.' *Home Indemn. Co. v. Plymouth* (1945), 146 Ohio St. 96, 32 O.O. 30, 64 N.E.2d 248, paragraph two of the syllabus."

Analyzing the distinguishing aspects of domicile and residence in the jurisdictional context as applied to military personnel engaged in divorce proceedings, it has been held:

"The terms 'domicil' and 'residence' although sometimes used synonymously, are frequently held not to be convertible and to have distinguishing characteristics. 'Domicil' ordinarily has a broader meaning than 'residence.' It includes residence. * * * [W]hile one can have only a single domicil, he may have several residences.

"The rule is well settled that domicil once established continues until it is superseded by a new domicil, and that the old domicil is not lost until a new one is acquired.

"[A] change of residence by [a person in the armed services] is not by volition but by order of superior military authority.

" * * * *

"The residence or domicil of a person in the military service is simply a question of intent. The actual residence of a military person, since it is not the result of his own volition, does not, of itself, operate to change the residence or domicil which he had when he entered military service." *Spires v. Spires* (1966), 7 Ohio Misc. 197, 200–201, 35 O.O.2d 289, 292, 214 N.E.2d 691, 694.

The Eighth District Court of Appeals stated:

"Courts in this state have examined several factors when there is a question concerning a person's status as a 'resident' in the insured's household, including the amount of time the person spends at the household, the person's age, the person's intent, and whether the insured is 'legally obligated' to the person." (Citations omitted.) *Wood v. McQueen* at 6.

The factual pattern of the case plays a significant role in determining whether one is a resident of a household. *Donegal Mut. Ins. Co. v. McConnell*

(Ala.1990), 562 So.2d 201, 204; *Wood v. Mut. Serv. Cas. Ins. Co.* (Minn.App.1987), 415 N.W.2d 748, 750.

In *Malone v. Nationwide Mut. Ins. Co.* (Jan. 31, 1986), Erie App. No. E–85–3, unreported, 1986 WL 1306, the court analyzed whether a homeowner's policy that provided coverage for "[r]elatives living in your household" afforded such coverage for the insured's son who had enlisted in the military, but regularly returned home on furloughs. The court stated that the enlisted man was required to "establish that, although distanced from [his hometown] by reason of active military service, he was, nonetheless, in contemplation of law, living in the household of his parents, the insureds." *Id.* at 2.

The *Malone* court "[recognized] that the term 'living in your household' connotes a much narrower concept than * * * jurisdictional questions incident to residency or domicile." *Id.* The court then took note of several relevant factors, including (1) Malone regularly returned to his parents' home on furloughs; (2) his Army personnel files listed his parents' address as his permanent address; (3) Malone's personal possessions were kept at his parents' home; and (4) he maintained his savings account with the bank in his hometown. The court, giving particular weight to the fact that Malone had never established a separate residence and/or household, held that the young man was a permanent resident of his parents' household, reasoning:

"We are dealing here with the classic case of a young boy, venturing upon the first moments of early manhood, leaving, for a period of time, the only home he has ever known—that is, with his parents but without securing a separate residence or maintaining a household of his own. John Malone clearly evidenced every intention to return to [his parents' home] when service to his country was over, as illustrated by intermittent occasions of furlough enjoyed in the home and company of his parents. We cannot say that the concept of household incumbents [at Malone's parents' address], as calculated in numbers, had been diminished by a unit of one upon young Malone's entry into the Army. Life in the barracks is not household living. Home to John L. Malone, and as viewed by this court in contemplation of law, was with his parents in Sandusky, Ohio."

In the case *sub judice,* Koby's answers to appellant's interrogatories, and the additional evidential materials, demonstrate that at the time of the incident (1) Koby's personal effects were kept at his own, off-base apartment, (2) his checking account was based in Texas, (3) his vehicle was licensed and registered in Texas, (4) he held an Ohio driver's license, (5) his credit card was issued from a Texas bank, (6) Koby's brokerage account was located with a brokerage firm in Texas, (7) Koby voted infrequently in Ohio, but nevertheless cast two votes in this state in 1984 and 1992, (8) he filed his federal income tax return using his parents' address, (9) Koby averred in his affidavit that his permanent residence was his

parents' address in Warren, Ohio, (10) official correspondence from the Army listed 9660 Howland–Springs Road, Warren, Ohio as Koby's permanent residence address, (11) Koby entered the Army in October 1987, and since that time has been stationed in Alabama, Wiesbaden, Germany, Columbus, Georgia, and Killeen, Texas, and (12) Koby stated that he planned to make the military his career and intended to remain in the military until eligible for retirement.

In our opinion, the instant case is factually distinguishable from *Malone*. Under the totality of the circumstances, it appears that Koby has established a separate residence in Texas. By virtue of his full-time military assignment, it appears that Koby spends a considerable amount of time away from his parents' residence, their home being the location to which he returns to enjoy visits. Second, Koby is thirty-two years old and, ostensibly, separated from the parental "nest" some time ago. Third, it appears that Koby is self-supporting and is not dependent upon his parents for support. Finally, Koby's stated intent, at the time of the hearing, was to maintain his residence in Texas for the immediately foreseeable future.

However, it also noteworthy that Koby's express intention is to return to Howland Township, Ohio, following the end of his term of enlistment. Another salient factor is that Koby was not married at the time of the accident. In our view, Koby's single status strengthens his ties to his parents' household. Furthermore, a subsequent marriage would not obviate the importance of Koby's single status with respect to his residential status as of the date of the incident.

In *Taylor*, the court noted that pursuant to a policy provision such as the one at issue here, "there [was] no requirement * * * that, in order for a person to be a resident of the named insured's household, such residence must be the *sole or exclusive* residence of the person[.]" (Emphasis added.) *Id.*, 39 Ohio App.3d at 70, 528 N.E.2d at 970. It has been held that "[r]esidence is a privilege, unlike domicile, and one can have several residences if he chooses. See, generally, 17 Am.Jur. 201, Domicile Sec. 9 (1957)." *Detroit Auto. Inter–Insurance Exchange v. Feys* (N.D.Cal.1962), 205 F.Supp. 42, 44.

The application of dual residency most often involves minor children of divorced parents seeking coverage under a parent's policy. See *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 671 N.E.2d 317; *Fay v. Motorists Ins. Co.* (1992), 80 Ohio App.3d 63, 608 N.E.2d 836.[5] *Taylor* is admittedly distinguishable from the instant appeal because (1) the person seeking coverage

---

5. One court has stated that there is "no practical difference between students temporarily living away from home, and military personnel, serving their country, who are on assigned duty away from home." *Boswell v. S. Carolina Ins. Co.* (Pa.Super.1986), 353 Pa.Super. 108, 117, 509 A.2d 358, 362.

there was a minor, and (2) she regularly spent substantial amounts of time in both of her parents' homes, two hundred days in her mother's home, and between one hundred sixty-two and one hundred seventy-two days at her father's house, pursuant to a visitation agreement.

Notwithstanding those distinctions, in our considered opinion the facts of the instant case, involving an emancipated adult who spends time in two households, also lend themselves to the application of the dual residency rule. Initially, we observe that adults occasionally maintain multiple residences, *e.g.*, "snow belt" residents who also maintain residences in the "sun belt," or entertainers who maintain homes in New York and Los Angeles. Thus, it is reasonable that an emancipated serviceman could maintain two or more residences, while having only one legal domicile. Discussing the dual residency rule as applied to emancipated children, the *Guillermin* court, reviewing *Ziegler v. Workman* (Mar. 30, 1994), Muskingum App. No. 93–28, unreported, 1994 WL 140755, stated:

"In *Ziegler*, the court affirmed summary judgment which found that the emancipated son of the insured was covered by the insured's automobile insurance policy. The court held that the son established dual residency when he testified that he resided in his parents' household twenty-five percent of the time, and at his girlfriend's residence seventy-five percent of the time. The son also received his mail at his parents' home. The court reasoned that the emancipated status of the son was 'a distinction without a difference' because the son was a relative of the insured and the policy language did not 'restrict coverage to exclusive residents (of the insured's household), or * * * allow dual residency only concerning minors.'" *Guillermin*, 108 Ohio App.3d at 555, 671 N.E.2d at 322, quoting *Ziegler*.

The temporal duration of a career serviceman's various military assignments is a factor that warrants special consideration. Koby, due to his ongoing military obligation, would not have the opportunity to apportion his time on a quantitative/percentage basis comparable to a minor child who spends a substantial amount of time with each parent. However, that does not negate the fact that he *regularly* spent a *sufficient* amount of time at the parental abode to justify the classification of Koby's parents' household, and his current military address, as constituting two parts of his dual residency equation. This is particularly true when Koby's periodic visits to Ohio are viewed in conjunction with Koby's other connections to his parents' household, *i.e.*, usage of their address as Koby's permanent residence address, the Ohio driver's license, the sporadic Ohio voting record, and the filing of income tax returns using the Ohio address, further demonstrating the sufficiency of Koby's ties to the Howland–Springs Road

address.[6]

It is also important to recognize that appellant could have more precisely defined the term "resident," but failed to do so. In our opinion, if a term is properly defined in the contract, the contract would control most factual situations. In our view, it is not a matter of whether the concept comes within the facts, but instead it turns on whether the facts come within the concept. In summary, having analyzed the pertinent case authorities, and construing the term "resident" liberally and in favor of the insured, we hold that Koby qualifies as a resident of his parents' household.

Finally, we believe that the cases cited by appellees in support of their position are inapposite because they pertain to the broader concept of domicile and residence for jurisdictional purposes. In fact, the court in *Hager v. Hager* (1992), 79 Ohio App.3d 239, 607 N.E.2d 63, stated that "[t]he word 'residence' in R.C. 3105.13 means 'domiciliary residence,'" a two-part concept that includes "(1) an actual residence in the jurisdiction, and (2) an intention to make the state of jurisdiction a permanent home." *Id.* at 244, 607 N.E.2d at 66.[7]

In *Hager*, the court reasoned that where the evidence indicated that for six months prior to the filing of Joseph Hager's complaint for divorce, the serviceman had lived in Ohio, intended to remain in Ohio, and had no intention to go anywhere else, the soldier had demonstrated that his "domiciliary residence" was in Ohio. In the instant case, Koby's present circumstances do not satisfy the domiciliary residence test, although Koby does currently maintain a residence in Howland Township, Ohio.[8]

Based on the evidential material which was presented, we determine that the trial court's resolution of the pertinent issues was proper, and there is no sign

---

6. Additionally, the General Assembly has recognized that military personnel should be accorded certain preferences with respect to insurance coverage. R.C. 5923.051 provides continued coverage "for the duration of the time the person is on active duty[.]" We also note that R.C. 4507.03 exempts a person on active duty in the armed forces from the driver's license renewal requirements for the period of his/her active duty, and six months thereafter, provided the person was a licensee at the time he commenced his active duty or service.

7. "[P]resent intent to remain indefinitely is the factor which distinguishes domicile from mere residence." 1974 Ohio Atty.Gen.Ops. No. 74–093, at 2–380 to 2–381, citing 1973 Ohio Atty.Gen.Ops. No. 73–080.

8. Appellee Koby states in his brief that "permanent *residence* in the State of Ohio once established is presumed to continue[,]" citing *Drazen v. Drazen* (May 8, 1981), Marion App. No. 9–80–44, unreported, 1981 WL 6843. (Emphasis added.) Our reading of *Drazen* indicates that the court was referring to *domicile*, and not residence. We further note that unlike this case, in which we are confronted with the meaning of the terms "resident of your household" in the insurance context, the *Drazen* decision was rendered in the context of a jurisdictional challenge.

that the trial court abused its discretion in granting summary judgment for appellees. Accordingly, appellant's assignment of error is without merit. The judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY and NADER, JJ., concur.