[Cite as *Nationwide Property Cas. Ins. Co. v. Kavanaugh*, 2013-Ohio-4730.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

NATIONWIDE PROPERTY CASUALTY : 
INSURANCE CO.

    Plaintiff-Appellee              :      C.A. CASE NO.   25747

v.                               :      T.C. NO.   12CV4473

JUACINTA KAVANAUGH          :      (Civil appeal from
                                        Common Pleas Court)

     Defendant-Appellant        :

                                  :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    25th    day of    October   , 2013.

. . . . . . . . . .

NICHOLAS E. SUBASHI, Atty. Reg. No. 0033953 and BRIAN L. WILDERMUTH, Atty. Reg. No. 0066303 and LAUREN K. EPPERLEY, Atty. Reg. No. 0082924, The Greene Town Center, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
     Attorneys for Plaintiff-Appellee

SEAN N. BRINKMAN, Atty. Reg. No. 0088253 and AARON G. DURDEN, Atty. Reg. No. 0039862, 10 W. Monument Avenue, Dayton, Ohio 45402
     Attorneys for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Juacinta Kavanaugh appeals a decision of the Montgomery County Court of Common Pleas, Civil Division, sustaining in part and overruling in part the motion for summary judgment of plaintiff-appellee Nationwide Property Casualty Insurance Co. Kavanuagh also appeals a decision of the trial court

overruling her motion to strike the affidavits of Brian Ferencz and James J. Kelleher. The trial court issued both decisions on April 12, 2013. Kavanaugh filed a timely notice of appeal with this Court on May 6, 2013.

{¶ 2} Kavanaugh purchased property located at 20 and 22 North Upland Avenue in Dayton, Ohio, on May 19, 2009, for $18,000.00. Kavanaugh paid for the property in cash. The property consisted of a residential double with two one-bedroom units side by side. During her deposition, Kavanaugh testified that she purchased the property with the intention of making it a home for herself, her ex-fiancee, and various family members. Kavanaugh testified that she lived with her fiancee at 20 North Upland Ave. from August of 2009 through early 2011. Kavanaugh testified that during this time period she also resided at her grandmother's house located at 1137 Platt Circle in Dayton, Ohio. After Kavanaugh split up with her fiancee in 2011, she testified that she began spending more time at her grandmother's residence, but still visited that North Upland house frequently.

{¶ 3} In January of 2011, Kavanaugh contacted Shamica Knight, an associate insurance agent for Nationwide Insurance, for a homeowner insurance quote. During the contract negotiations, Knight stated that to qualify for the type of policy she wanted, Kavanaugh, as the owner of the subject property, would have to reside there. Knight also suggested to Kavanaugh that she might be interested in purchasing a non-owner occupied property policy, but Kavanaugh unequivocally stated that she would be living at the subject property. Accordingly, on June 13, 2011, Nationwide issued an owner-occupied homeowner insurance policy to Kavanaugh for 20 and 22 North Upland.

{¶ 4} At approximately 4:00 a.m. on March 25, 2012, the property located at 20

and 22 North Upland Avenue was destroyed by an arson fire. Subsequently, on April 10, 2012, Kavanaugh submitted a "Sworn Statement in Proof of Loss" to Nationwide seeking $182,588.00 in insurance benefits. Upon investigating the insurance claim, Nationwide concluded that Kavanaugh had not been residing at 20 North Upland Avenue address as required by her owner-occupied property policy. In fact, Nationwide's investigation established that the subject property had been vacant for one to two months prior to the fire.

{¶ 5} On June 19, 2012, Nationwide filed a declaratory judgment action with the trial court for a determination regarding whether Kavanaugh was entitled to benefits under the owner-occupied homeowner policy. After extensive discovery, Nationwide filed a motion for summary judgment on February 11, 2013, asserting that Kavanaugh was not entitled to coverage under the owner-occupied homeowner policy because she did not live at 20 North Upland Avenue at the time of the fire. Kavanaugh filed a memorandum in opposition to Nationwide's motion, as well as motions to strike the affidavits of Nationwide representatives James Kelleher and Brian Ferencz, the employees who investigated Kavanaugh's claim.

{¶ 6} On April 12, 2013, the trial court sustained in part and overruled in part Nationwide's motion for summary judgment. Significantly, the trial court found that Kavanaugh was not residing at the subject property at the time of the fire and was, therefore, not entitled to coverage under the owner-occupied homeowner policy. The trial court, however, overruled the portion of Nationwide's motion for summary judgment wherein it argued that Kavanaugh made intentional misrepresentations of fact, including false statements, at the time that the insurance contract was executed and subsequently when the

fire was being investigated. The trial court also denied Kavanaugh's motions to strike the affidavits of Kelleher and Ferencz, finding that said affidavits were admissible under Civ. R. 56 and the Ohio Rules of Evidence. We note that the trial court stated that, although the affidavits were admissible, it did not consider either affidavit when deciding Nationwide's motion for summary judgment.

**{¶ 7}** It is from this judgment that Kavanaugh now appeals.

**{¶ 8}** Initially, we note that Nationwide advances two cross-assignments of error with respect to the trial court's decision sustaining in part and overruling in part its motion for summary judgment. Because it is dispositive of the instant appeal, we will address Kavanaugh's third assignment of error out of order as follows:

**{¶ 9}** "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF."

**{¶ 10}** In her third assignment, Kavanaugh contends that the trial court erred when it sustained in part and overruled in part Nationwide's motion for summary judgment. Specifically, Kavanaugh argues that she presented evidence which created a genuine issue regarding whether she was a "resident" of 20 North Upland Avenue pursuant to the insurance policy at the time the fire occurred.

**{¶ 11}** An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.,* 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist. 1983).

{¶ 12} Pursuant to Civil Rule 56(C), summary judgment is proper if: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve. *Id*.

{¶ 13} "A court must give undefined words used in an insurance contract their plain and ordinary meaning." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus. Nevertheless, "[i]f a term is clear and unambiguous [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Santana v. Auto Owners Ins. Co.*, 91 Ohio App.3d 490, 494, 632 N.E.2d 1308 (6th Dist.1993); see also *Cincinnati Ins. Co. v. Am. Line Bldrs. Apprenticeship Training Program*, 93 Ohio App.3d 392, 395, 638 N.E.2d 1047 (2d

Dist.1994).

{¶ 14}  Of the five types of coverage identified in the property coverage section, the only two that are implicated in the instant appeal are dwelling and personal property coverage.  The coverage under the policy for a dwelling is limited to "the dwelling on the residence premises *used mainly as your private residence..."* Complaint, Exh. A (Policy), pg. B1.  The coverage for personal property is limited to "personal property owned or used by an insured at the residence premises." *Id.*  "Insured" is defined as "you and the following residents of your household at the residence premises: A) your relatives; B) any other person under the age of 21 in the care of you or your relatives." *Id*. at A1.  "You" is defined as "the named insured shown in this policy *who resides at the resident premises." Id*.  "Residence premises" is defined as the "one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated." *Id*.  We note that the terms "reside," "resident," and "residence" are not defined in the policy.

{¶ 15}  We have previously held that when left undefined in an insurance contract, the term "residing" is an ambiguous term. *Hicks v. Mennonite Mutual Insurance Co.*, 2d Dist. Miami No. 10-CA-17, 2011-Ohio-499.  "[T]he word 'residing' is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent abode[.]  * * * [T]he words 'resident,' 'residence' and 'residing' have no precise, technical and fixed meaning applicable to all cases.  'Residence' has many shades of meaning, from mere temporary presence to the most permanent abode.  It is difficult to give an exact or even satisfactory definition of the term 'resident,' as the term is flexible, elastic, slippery and

somewhat ambiguous. * * * Definitions of 'residence' include 'a place of abode for more than a temporary period of time' and 'a permanent and established home' and the definitions range between these two extremes. This being the case, our courts have held that such terms should be given the broadest construction and that all who may be included, by any reasonable construction of such terms, within the coverage of an insurance policy using such terms, should be given its protection. (Citations omitted)." *Id.* at ¶¶ 44, 45; quoting, *Prudential Prop. & Cas. Ins. Co. v. Koby*, 124 Ohio App.3d 174, 705 N.E.2d 748 (11th Dist.1997).

{¶ 16} Kavanaugh testified that she purchased the subject property with the intent to provide a residence for her ex-fiancee and herself. Kavanaugh also testified that she also foresaw other family members moving into the property. It is undisputed that Kavanaugh never resided at the other half of the double, 22 North Upland. Thus, the narrow issue before us is whether a question of fact exists regarding whether Kavanaugh resided at 20 North Upland on March 25, 2012, the date the fire destroyed the premises.

{¶ 17} Kavanaugh, her children, and her ex-fiancee moved into 20 North Upland in August of 2009. Shortly thereafter, Kavanaugh began staying at her grandmother's house at 1137 Platt Circle. Kavanaugh testified that from August of 2009 through December of 2009, she stayed three to four nights a week at each home. Kavvanaugh testified that her relationship with her ex-fiancee was "on again/off again." Kavanaugh further testified that between 2009 and 2011, even when she was not getting along with her ex-fiancee, she continued to periodically stay at 20 North Upland.

{¶ 18} Kavanaugh testified that by January 1, 2012, she was no longer spending the

night at 20 North Upland. From January 1, 2012, until the date of the fire, Kavanaugh stayed three or four nights a week at 1137 Platt Circle and the remaining nights of the week at either her mother's house or a friend's residence. The only time Kavanaugh spent the night at 20 North Upland during that time period was in February of 2012, after the Dayton Police had knocked down the doors to 20 North Upland while responding to a call at that address. Kavanaugh learned of the police conduct in a telephone call from someone. Kavanaugh also testified that she allowed her ex-fiancee's nephews, Trevon and Rodney, to live at 20 North Upland, at some point during 2011 and/or 2012. Kavanaugh testified that she thought that Trevon and Rodney abandoned the premises approximately two weeks before the fire.

{¶ 19} Although Kavanaugh was not living at 20 North Upland, she testified that she regularly stopped to check on the property and collect the mail. Despite these purported checkups, Kavanaugh testified that she was unaware that the City of Dayton had to mow the grass and pick up trash around the property in 2011. Significantly, both the electricity and natural gas services had been shut off and the accounts were terminated when the fire occurred on March 25, 2012. Vectren, the supplier of natural gas to the residence, closed the account for 20 and 22 North Upland on March 7, 2012. DP&L disconnected the electricity to the subject property on February 27, 2012, approximately one month prior to the fire.

{¶ 20} The evidence also establishes that Kavanaugh never used the 20 North Upland address as her permanent address. In fact, Kavanaugh continuously maintained her grandmother's 1137 Platt Circle residence as her mailing address. The Platt Circle address

is listed as her residence on her driver's license, voter registration records, bank records, and income tax records. Kavanaugh's children also attended school in the district in which 1137 Platt Circle is located during the disputed time frame. Further, Kavanaugh listed the Platt Circle address as her address with her employer. At the time of the fire, Kavanaugh testified that she did not keep any everyday personal items (clothing she wore, toiletries, bedding) at 20 North Upland. Kavanaugh testified that she stored clothing that she no longer wore in the basement at 20 North Upland, and there was no television or stereo equipment kept at the subject property.

{¶ 21} In support of her argument that she was, in fact, a resident of 20 North Upland, Kavanaugh cites the following three cases: *Prudential Prop. & Cas. Ins. Co. v. Koby*, 124 Ohio App.3d 174, 705 N.E.2d 748 (11th Dist.1997); *Hicks v. Mennonite Mutual Insurance Co.*, 2d Dist. Miami No. 10-CA-17, 2011-Ohio-499; and *Whitaker v. Grange Mut. Ins. Co.*, 2d Dist. Montgomery No. 20474, 2004-Ohio-5270.

{¶ 22} *Prudential Prop. & Cas. Ins. Co. v. Koby*

{¶ 23} The factual situation in *Koby* involved a thirty-two year old man who had entered the military seven years before an accidental shooting incident that occurred at his parents' home in Ohio, giving rise to the request for insurance coverage. *Id*. at 175 and 179. There were several factors that led the Eleventh District Court of Appeals to conclude that the serviceman had established a separate residence in Texas. These included the fact that he kept his personal effects at an off-duty base in Texas, that he had a checking account in Texas, that he had registered his vehicle and as a driver in Texas, and that he said that he intended to make the military his permanent career. *Id*. at 179-80. The court noted that the

serviceman spent a "considerable amount of time away from his parents' residence, their home being the location to which he returns to enjoy visits." *Id*. at 180. In addition, the court stated that some factors indicated an intention to return to the parents' home following the end of the serviceman's term of enlistment. Citing *Farmers Ins. of Columbus, Inc. v. Taylor*, 39 Ohio App.3d 68, 528 N.E.2d 968 (10th Dist.1987), the court commented that:

> [P]ursuant to a policy provision such as the one at issue here, "there [was] no requirement * * * that, in order for a person to be a resident of the named insured's household, such residence must be the sole or exclusive residence of the person[.]" (Emphasis added.) Id., 39 Ohio App.3d at 70, 528 N.E.2d at 970. It has been held that "[r]esidence is a privilege, unlike domicile, and one can have several residences if he chooses." *Koby*, 124 Ohio App.3d at 180 (citations omitted).

{¶ 24} Thus, the court found that, although the rule of dual residency usually only applied in the context of minor children with divorced parents, it was appropriate to apply the rule to an "emancipated serviceman." The court noted that Koby "regularly spent a sufficient amount of time at the parental abode." The court also noted that Koby used his parents' residence as his permanent address, that he maintained an Ohio driver's license, and that he used his parents' address for voting and income tax purposes.

{¶ 25} *Koby* is clearly distinguishable from the instant case. Kavanaugh has never been in the military. Kavanaugh never used 20 North Upland as her permanent address on any of her personal documents. Lastly, Kavanaugh spent a negligible amount of time at 20

North Upland. From January 1, 2012, until the fire on March 25, 2012, Kavanaugh spent only three nights at the subject property after the police broke the doors down at the location. The record fails to establish that Kavanaugh maintained a dual residency of both 1137 Platt Circle and 20 North Upland.

{¶ 26} *Hicks v. Mennonite Mutual Insurance Co.*

{¶ 27} In *Hicks*, the plaintiff submitted a fire loss claim related to property that had been in his family for approximately thirty-five years. Prior to the fire, the property had been transferred to the plaintiff by his mother. The plaintiff lived at the residence exclusively while his new house was being built. Even after his new house was built, the plaintiff maintained a strong presence at the property, to wit: he kept many personal effects at the property, he often spent the night at the property and took his meals there, and he paid for the utilities and the homeowner's insurance. Accordingly, we held that a genuine issue of material fact existed regarding whether the plaintiff resided in the insured premises at the time of the fire.

{¶ 28} Unlike the plaintiff in *Hicks*, the record establishes that Kavanaugh did not maintain a regular presence at 20 North Upland, only stopping by every few days to retrieve the mail. While she kept some large furniture items at the subject property, Kavanaugh did not keep any everyday living items there such as clothing, bedding, toiletries, televisions, stereos, or other personal mementos. Moreover, the power and gas had been turned off at the property for approximately a month prior to the fire. Simply put, there is nothing in the record, which establishes that Kavanaugh maintained a residence at 20 North Upland at the time of the fire.

**{¶ 29}** *Whitaker v. Grange Mut. Ins. Co.*

**{¶ 30}** In *Whitaker*, a husband and wife had moved from the insured premises and each, in fact, maintained their own separate residences, apart from the insured premises. At the time of the fire, the wife lived in Lexington, Kentucky, and her husband lived in an apartment in Dayton, Ohio. *Id*. Moreover, more than a year before the fire, the insured premises had been rented to unrelated third-parties, who were paying rent to the husband and wife. The renters were also paying the utilities on the property. *Id*.

**{¶ 31}** Furthermore, the husband and wife in *Whitaker* had sent a change of address notice to their insurance agent before the fire, advising the agent that they were renting out the insured premises and no longer lived there. They were informed by the agent that their homeowner's policy would not cover losses due to fire if the insured premises were not their primary residence. The agent also told the husband and wife to cancel the policy and apply for a dwelling-fire policy, but they declined to do so. *Id*. at ¶ 3.

**{¶ 32}** In *Whitaker*, we affirmed a summary judgment rendered in favor of an insurer on the issue of coverage. We found no ambiguity in the policy, and concluded that the policy required the insured to be residing in the premises at the time of the fire in order for the dwelling to be covered. *Id*. at ¶ 15. Based on the facts of that case, we held that the parties were living elsewhere and were using the dwelling as rental property, not as their residence. *Id*.

**{¶ 33}** "Reside" is defined as follows:

> [To] [l]ive, dwell, abide, sojourn, stay, remain, lodge. To settle oneself *** in a place, to be stationed, to remain or stay, to dwell permanently

or continuously, to have a settled abode for a time, to be in residence, to have an abiding place ***.

*Black's Law Dictionary* 1176 (5th Ed. 1979).

{¶ 34} Even if we give the term "reside" its broadest construction, the evidence establishes that Kavanaugh, like the plaintiffs in *Whitaker*, did not reside at 20 North Upland at the time of the fire. As stated previously, there was no power or gas for over a month prior to the fire. The record establishes that Kavanaugh did not maintain a regular presence at 20 North Upland, only stopping by every few days to retrieve the mail. Additionally, Kavanaugh never used 20 North Upland as her permanent address on any of her personal documents. Further, she allowed her ex-fiancee's nephews to live there at some point in 2011 or 2012. Accordingly, the trial court did not err when it sustained Nationwide's motion for summary judgment regarding both the dwelling coverage and the personal property coverage because each form of coverage required that 20 or 22 North Upland be Kavanaugh's residence on the date of the fire, March 25, 2012.

{¶ 35} Finally, Nationwide asserts in its cross-assignments of error that Kavanaugh made intentional misrepresentations of fact, including false statements, at the time that the insurance contract was executed and subsequently when the fire was being investigated rendering the contract void. However, we need not address these issues, as summary judgment was properly granted on the issue of "residence."

{¶ 36} Kavanaugh's third assignment of error is overruled.

{¶ 37} Kavanaugh's first and second assignments of error are as follows:

{¶ 38} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S

MOTION TO STRIKE AFFIDAVIT OF BRIAN FERENCZ."

{¶ 39} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION TO STRIKE AFFIDAVIT OF JAMES KELLEHER."

{¶ 40} In her first and second assignments, Kavanaugh contends that the trial court erred when it overruled her motions to strike the affidavits of Ferencz and Kelleher. The trial court noted, however, that "neither Mr. Ferencz's nor Mr. Kelleher's affidavits were relied upon when coming to the conclusion set forth in the summary judgment decision and order" filed on April 12, 2013, in which the court sustained Nationwide's motion for summary judgment in part finding Kavanaugh ineligible for coverage under the owner-occupied homeowner policy. Because the trial court did not rely on Kelleher's or Ferencz's affidavit, any issue regarding whether the trial court erred in refusing to strike the documents is rendered moot.

{¶ 41} All of Kavanaugh's and Nationwide's assignments and cross-assignments of error having been overruled or rendered moot, the judgment of trial court is affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Nicholas E. Subashi
Brian L. Wildermuth
Lauren K. Epperley
Sean N. Brinkman
Aaron G. Durden
Hon. Michael L. Tucker