THE STATE, EX REL. KILBURN, APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State, ex rel. Kilburn, *v.* Indus. Comm.
(1982), 1 Ohio St. 3d 103.]

(No. 81-1562—Decided July 28, 1982.)

104

*Messrs. Beall, Hermanies & Bortz, Mr. John H. Hermanies* and *Mr. Ronald D. Major,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. James E. Uprichard, Jr.,* for appellee Industrial Commission.

*Mr. James L. Flannery,* prosecuting attorney, and *Mr. Michael E. Powell,* for appellee Warren County Department of Water and Sewer.

*Per Curiam.* The critical consideration in this case is whether the record contains some evidence which supports the commission's factual determination that the water department's principal business is not building and other construction or demolition work, thus rendering IC-3-11.03(A) inapplicable to the facts at bar.

Specifically, the pertinent language of IC-3-01.01 provides:

*"Employers not engaged in building and other construction or demolition work as their principal business and having regularly assigned employees performing work covered by the provisions of this code shall not be considered within the scope of this code.* Safety devices and safeguards shall be provided for employees of such exempted employers on such excepted operations, and the material used in such safety devices and protective equipment shall provide the factors of safety required by this code.* * *"* (Emphasis added.) Thus, if an employer's principal business is not building and other construction or demolition work, then that employer is not required to comply with IC-3-11.03(A).

The significant factors in evaluating whether an activity constitutes an employer's "principal business" include *inter alia:* source of income, expenditures and disbursements and actual functions performed by the employer. See, generally, *W.R. Co.* v. *North Carolina Property Tax Comm.* (1980), 48 N.C. App. 245, 260, 269 S.E.2d 636. See, also, Webster's Third New International Dictionary ("principal" is defined as "most important, consequential, or influential"); Black's Law Dictionary (5 Ed.) ("principal" is defined as "[c]hief; leading; most important or considerable; primary; original").

Applying these factors and definitions to the facts *sub judice,* we find, for the reasons that follow, that the Court of Appeals and the commission correctly concluded that building and construction were not the "principal business" of the water department.

Initially, the report of Hearing Officer Robert E. Ward reflects that: (1) the water department's operation "is primarily to supply water to the county" and (2) construction, including materials, comprises merely 20 to 30 percent of the water department's budget.

Futhermore, the report of R. Richard Pfalzgraf, the investigator upon whom the commission specifically relied in making its factual findings, stated:

"The investigation revealed that the claimant was employed as a Maintenance Man by the Warren County Department of Water & Sewer * * *. That he sustained the injury of record while working inside of a trench excavation, in the process of repairing a service leak at a water main. *That*

*construction was not the principal business of the employer. That the principal business of the Warren County Department of Water & Sewer was the sale and distribution of water to citizens in Warren County, Ohio.*" (Emphasis added.)

After a careful review of the entire record, we conclude that the record does contain some evidence to support the commission's factual findings that: the water department's principal business is to supply water to the citizens of Warren County and not to engage in building or other construction work. See *State, ex rel. Allerton, v. Indus. Comm.* (1982), 69 Ohio St. 2d 396, 397 [23 O.O. 3d 358]; *State, ex rel. Dodson, v. Indus. Comm.* (1980), 62 Ohio St. 2d 408, 409-410 [16 O.O. 3d 439]. As such, we refuse to reweigh the evidence. *State, ex rel. GF Business Equip., Inc., v. Indus. Comm.* (1981), 66 Ohio St. 2d 446 [20 O.O. 3d 379].

Accordingly, for all the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and KRUPANSKY, JJ., concur.

W. BROWN, HOLMES and C. BROWN, JJ., dissent.

CLIFFORD F. BROWN, J. dissenting. The finding of the Industrial Commission and the decision of this court cause an unjust denial of an additional award of compensation to relator. The determination that the water department's principal business is supplying water to the citizens of Warren County, not building and construction, ignores the fact that distribution and supply of water necessarily includes the construction, installation, maintenance and repair of water mains, pipelines and other facilities.[1]

To be within the scope of the Industrial Commission's specific safety requirements, the employee must be "engaged in building and construction work." IC-3-01.01. Such work is defined to include "the excavation, construction, alteration, and repair of * * * sewers, * * * trenches, * * * pipelines, * * * and all operations pertaining thereto." *Id.*

The following evidence supports a determination that the water depart-

---

[1] A review of R.C. Chapter 6103 makes it clear that the primary function of the county water department is the construction, maintenance and repair of water distribution facilites. For example, R.C. 6103.02, in part, provides:

"For the purpose of preserving and promoting the public health and welfare, and providing fire protection, any board of county commissioners may by resolution acquire, construct, maintain, and operate any public water supply or water work system within its county for any sewer district, * * *. The sanitary engineer, * * * shall assist the board in the performance of its duties under sections 6103.02 to 6103.30 of the Revised Code, and shall be charged with such other duties and services in relation thereto as the board prescribes.* * * No public water supplies or water pipes or mains shall be constructed in any county outside of municipal corporations by any person, firm, or corporation except for the purpose of supplying water to such municipal corporations, until the plans and specifications for the same have been approved by the board."

ment was engaged in building and construction work within the meaning of IC-3-01.01. On a day to day operational basis, the water department installed, maintained and repaired lines by digging trenches, regularly using various types of equipment for such trenches and excavations. On the average of two days per week relator performed work which included digging trenches and installing water lines. All installations involved work in trenches over five feet deep, at which depth the Industrial Commission regulation IC-3-11.03(A) requires bracing and support.

Notwithstanding this evidence, the commission and this court have determined that the principal business of the water department was "to supply water to the citizens of Warren County and not to engage in building or other construction work." However, supplying water and constructing, maintaining and repairing water mains, pipelines and facilities are inextricably interwoven. Therefore, the water department was "engaged in building and other construction * * * work as * * * [its] principal business" within the meaning of IC-3-01.01.

The other view is supported solely by an investigator's report by one investigator, R. Richard Pfalzgraf, appointed by the commission, which stated that he "was told" the principal business of the water department was the sale and distribution of water. Such a report is a mere self-serving declaration by an employer that it did not violate a specific safety requirement, unsupported by testimony or exhibits. The decision of the commission that the water department is exempt from these specific safety requirements constitutes an abuse of discretion, since there was no reliable evidence on which it could base the exemption. See *State, ex rel. Humble,* v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77 [14 O.O. 3d 275]. Nevertheless, this court labeled this report "some evidence" to support the commission's factual findings, and has denied the requested writ. The decision today carries the "some evidence" standard to absurd extremes and emphasizes the mischief its application has caused. Moreover, there is no need to muddy the waters of judicial precedent by resting upon the nebulous "some evidence" standard, a shibboleth which had its first flash, like spontaneous combustion, in *State, ex rel. Dodson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 408, 410 [16 O.O. 3d 439]. See my dissent in *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 170 [22 O.O. 3d 400]. *Dodson* was without any prior judicial precedent to justify its spawning, or its subsequent spewing, like judicial flotsam and jetsam, into several recent workers' compensation cases. See, also, dissent in *State, ex rel. Allerton,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 396, at 399-400 [23 O.O. 3d 358]. Only an alarming tendency towards judicial oscitancy in the workers' compensation field permits such a rubber stamp standard of review to persist.

Believing relator to be entitled to an additional award because his injury resulted from the violation of a specific safety requirement, I dissent.

W. BROWN, J., concurs in the foregoing dissenting opinion.