DECISION AND JUDGMENT ENTRY
{¶ 1} The Estate of Margaret Monnig, Timothy Bentley, and Daniel Monnig appeal the Lawrence County Common Pleas Court's summary judgment entered in State Farm Mutual Automobile Insurance Company's favor in this personal injury case. They argue that the trial court incorrectly determined that State Farm's "other owned auto" exclusion precluded Bentley's and Daniel's uninsured/underinsured motorist ("UM/UIM") claims that arose out of Margaret's wrongful death under two separate automobile liability insurance policies that State Farm issued to Margaret Monnig and Timothy Bentley. Appellants contend that they qualify as "insureds" under the policies and that because neither Bentley nor Daniel was operating or occupying a motor vehicle that the policy failed to specifically identify, State Farm's "other owned auto" exclusion does not apply. Appellants further assert that State Farm may not deny their UM/UIM wrongful death claims simply because neither Bentley nor Daniel is seeking UM/UIM coverage for their own physical injuries. Appellants argue that Moore v. State Auto (2000), 88 Ohio St.3d 27,723 N.E.2d 97, prohibits State Farm from requiring them to have suffered their own physical injury in order to receive UM/UIM coverage for Margaret's wrongful death.
 {¶ 2} Because State Farm's "other owned auto" exclusion does not clearly define to which "insured" it applies, we find it ambiguous. Therefore, we construe the provision in favor of appellants and find that the exclusion does not preclude their UM/UIM claims as they were not occupying an other owned vehicle at the time their claims arose. Additionally, under Moore,
State Farm cannot require Bentley or Daniel to have suffered their own physical injury in order to receive UM/UIM coverage for Margaret's wrongful death. Accordingly, we sustain appellants' assignments of error and reverse the trial court's judgment.
 {¶ 3} The parties do not seriously dispute the underlying facts. In May of 2000, Bentley and Margaret Monnig, Bentley's common law spouse, were involved in an accident that Julie Newman allegedly caused. Ms. Monnig suffered fatal injuries while riding her motorcycle.
 {¶ 4} At the time of the accident, Bentley carried an automobile liability policy with State Farm that provided UM/UIM coverage in the amount of $50,000 per person and $100,000 per accident. The policy identified one vehicle: a 1998 Pontiac Firebird. Ms. Monnig also carried a State Farm automobile liability policy with the same UM/UIM limits. Her policy identified one vehicle: a 1998 Chevrolet Tahoe.
 {¶ 5} In May of 2002, appellants filed a complaint against State Farm seeking UM/UIM coverage due to the damages they suffered as a result of Ms. Monnig's wrongful death. State Farm subsequently filed a summary judgment motion, arguing that the "other owned auto" exclusion contained in both Bentley's and Ms. Monnig's policies precluded UM/UIM coverage. The trial court agreed with State Farm and granted its summary judgment motion.
 {¶ 6} Appellants timely appealed the trial court's judgment and raise the following assignments of error: "First Assignmentof Error: — The trial court's decision granting appellee's motion for summary judgment is contrary to O.R.C. 2125.02, as appellee's insurance contract with appellants provides coverage benefits as long as appellants suffered `bodily injury.' SecondAssignment of Error: — The trial court's decision granting appellee's motion for summary judgment is contrary to the tenth appellate district court's decision in Gaines v. State Farm Mut.Auto. Ins. Co., 2002-Ohio-2087; 2002 Ohio App. Lexis 1995 (unreported)."
 {¶ 7} An appellate court independently reviews a trial court's decision to grant summary judgment. See Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. In doing so, we apply the standard contained in Civ.R. 56. SeeHorsley v. Essman (2001), 145 Ohio App.3d 438, 442,763 N.E.2d 245. Under Civ.R. 56(C), summary judgment is appropriate when: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, when viewed most strongly in favor of the non-moving party, that reasonable minds can come to a conclusion only in favor of the moving party. See, e.g.,Grafton, supra.
 {¶ 8} The interpretation of an automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court. See, e.g., Nationwide Mut.Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107,108, 652 N.E.2d 684; Alexander v. Buckeye Pipeline Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. In interpreting an automobile liability insurance policy, a court's role "is to give effect to the intent of the parties to the agreement." Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 797 N.E.2d 1256, at ¶ 11. In doing so, "[w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." Id. (citations omitted). "We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning."
Id. (citations omitted).
 {¶ 9} However, when provisions in an insurance contract "are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 519 N.E.2d 1380 syllabus; see, also, Westfield, at ¶ 13. This, "`rule will not be applied so as to provide an unreasonable interpretation of the words of the policy.'" Id. at ¶ 14 (quoting Morfoot v. Stake (1963), 174 Ohio St. 506,190 N.E.2d 573, paragraph one of the syllabus).
 {¶ 10} Former R.C. 3937.18(A)(2)[1] required an insurer to offer: "Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage."
 {¶ 11} Former R.C. 3937.18(J) allowed insurers to preclude UM/UIM coverage if, at the time of the accident, the insured was not operating or occupying a vehicle specifically identified in the policy. The statute provided: "[UM/UIM coverage] may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances: (1) while the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the insured and underinsured motorist coverages are provided."
 {¶ 12} In their two assignments of error, appellants assert that the trial court improperly granted State Farm's summary judgment motion. They claim that State Farm's "other owned auto" exclusion does not preclude their UM/UIM claims for Ms. Monnig's wrongful death because they were not occupying an "other owned auto." Appellants further argue that State Farm may not deny their claims simply because they are not seeking coverage for their own physical injury. Instead, appellants assert that underMoore, State Farm may not structure its policy so as to require the insured to have suffered bodily injury.
 {¶ 13} In contrast, State Farm argues that the policies' "other owned auto" provisions exclude coverage for appellants' UM/UIM claims because the insured through which appellants base their derivative actions was occupying an other owned vehicle that was not listed. The provision, which is identical in both policies, states: "There is no coverage * * * 2. for bodily injury to an insured: a. while operating or occupying a motor vehicle owned or leased by, furnished to, or available for the regular use of you, your spouse or any relative if it is not insured for this coverage under this policy." State Farm asserts that this provision precludes UM/UIM coverage for any claimant when the person who actually suffers the bodily injury did so while operating or occupying a motor vehicle that is not covered under the policy. State Farm thus argues that because Ms. Monnig, who qualifies as an insured under both policies, suffered her bodily injury while operating a vehicle that was not insured under either her own or Bentley's policy, appellants are precluded from recovering UM/UIM benefits under the policies for her unfortunate death. State Farm would thus have us give the following reading to its other owned auto exclusion: "There is no coverage [for any damages arising from] * * * 2. bodily injury to an insured (Ms. Monnig, Bentley, or Daniel): a. while [an insured is] operating or occupying a motor vehicle owned or leased by, furnished to, or available for the regular use of you, your spouse or any relative if it is not insured for this coverage under this policy."
 {¶ 14} Appellants interpret State Farm's other owned auto provision differently and contend that the provision means: "There is no coverage * * * 2. for bodily injury to an insured (Ms. Monnig): a. while [Ms. Monnig is] operating or occupying a motor vehicle owned or leased by, furnished to, or available for the regular use of you, your spouse or any relative if it is not insured for this coverage under this policy." Appellants thus posit that the exclusion does not apply to them for their wrongful death claims because they, as insureds, did not suffer their injury (wrongful death) while operating or occupying a vehicle that was not insured. In support of their argument, appellants refer us to Gaines v. State Farm Mut. Auto. Ins.Co., Franklin App. No. 01AP-947, 2002-Ohio-2087.
 {¶ 15} In Gaines, Jerry Gaines suffered fatal injuries while driving a 1984 Kawasaki motorcycle. His wife, Sherry Gaines, sought UM benefits, individually for Jerry's wrongful death and as administrator of his estate, under two separate State Farm insurance policies. The policies identified two vehicles: a 1997 Ford Taurus and a 1989 Buick Electra. State Farm denied coverage, claiming that because Jerry did not suffer injuries while operating a vehicle specifically identified in the policy, the "other owned auto" exclusion precluded coverage. State Farm's "other owned auto" exclusion provided: "There is no coverage * * * for bodily injury to an insured: While operating or occupying a motor vehicle owned or leased by, furnished to, or available for the regular use of you, your spouse or any relative if it is not insured for this coverage under this policy."
 {¶ 16} On appeal, the Tenth District concluded that the "other owned auto" exclusion precluded appellant's UM claim brought in her capacity as administrator of her husband's estate, but did not preclude her UM claim brought in her individual capacity for the damages she suffered as a result of her husband's wrongful death. The court reasoned: "The ['other owned auto'] exclusion * * * bars coverage for bodily injury to an insured, Jerry Gaines, `while operating or occupying a motor vehicle' owned or leased by the insured, spouse or relative if the vehicle is not insured under the policy. In the instant action, appellant was not operating or occupying the motorcycle."
 {¶ 17} Gaines is substantially similar to the case before us. The language of the other owned auto provisions is nearly identical. Both provisions state that the coverage does not apply to "an insured," but do not further clarify to which insured the exclusion applies.
 {¶ 18} The provisions could reasonably mean that UM/UIM coverage is precluded when any insured suffers injury while operating or occupying a vehicle that the policy does not cover. However, they could also reasonably mean that UM/UIM coverage is precluded only against an insured who is actually operating or occupying a vehicle that the policy does not insure. Because State Farm's other owned auto exclusion is subject to two differing, reasonable interpretations, we must construe the provision against State Farm, the insurer, and in favor of appellants, the insureds. See King, supra; Lane, supra. Doing so then requires that we find that the exclusion does not apply to Bentley or Daniel, as neither suffered their injuries while operating or occupying a vehicle that State Farm's policies did not insure.
 {¶ 19} While we agree with State Farm that "[t]he concept behind [the other owned auto] exclusion is to prevent an individual from obtaining more coverage for a vehicle than * * * bargained for," the ambiguous language of the policy precludes us from giving effect to this concept. The parties' intent controls when the contract language is clear; when it is ambiguous, we cannot discern their intent.
 {¶ 20} Next, State Farm seeks to deny Bentley's and Daniel's claims because neither is seeking UM/UIM coverage due to their own physical injuries. However, Moore prohibits State Farm from using this rationale to deny coverage.
 {¶ 21} In Moore, the insured's son died in an automobile accident. The insured was neither involved in the accident nor suffered any bodily injury. The insured sought UM/UIM coverage under her automobile liability policy for the damages arising from the wrongful death of her son. The insured's son was not an insured under her policy. The insurer sought to deny coverage, arguing that its policy required the insured to sustain bodily injury. On appeal, the Ohio Supreme Court held that R.C. 3937.18, as amended by S.B. 20, did "not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer."[2] Id., syllabus. Moore
essentially revived Sexton v. State Farm Mut. Ins. Co. (1982),69 Ohio St.2d 431, 433 N.E.2d 555.[3]
 {¶ 22} Based upon Moore, we conclude that State Farm may not deny appellants' UM/UIM claims arising out of Margaret's death simply because they did not suffer physical injury. While in Bentley v. Progressive Ins. Co., Lawrence App. No. 02CA10, 2002-Ohio-6532 (Bentley I), we stated that Moore did not apply to Bentley's emotional injury claims, Bentley I is distinguishable. In Bentley I, Bentley sought to maintain a separate UM/UIM claim for his emotional injuries in addition to his UM/UIM claim for his physical injuries. We stated thatMoore did not apply because the insurer, Progressive, was not attempting to outright deny any UM/UIM coverage to Bentley, but instead, sought to limit all claims that arose from his physical injuries to the per person limit. Here, however, State Farm is attempting to outright deny appellants' UM/UIM claims. Thus,Moore controls and prohibits State Farm from outright denying appellants' UM/UIM claims arising out of Margaret's death.
 {¶ 23} State Farm's attempts to distinguish this case fromMoore are unavailing. State Farm appears to assert that Moore
is limited to its facts and, thus, that it does not apply when the insurer seeks to deny coverage to an insured when that insured is seeking UM/UIM coverage as the result of the wrongful death of a person who also qualifies as an insured under the same policy. However, we find nothing in Moore to indicate that the court intended to so limit its holding. Instead, we read Moore
to mean that when an insured possesses a wrongful death claim, the insurer may not deny coverage solely because that insured did not suffer physical injury. That is what State Farm attempts to do here, and Moore prohibits it.
 {¶ 24} Therefore, we sustain appellants' assignments of error and reverse the trial court's judgment.
Judgment Reversed and Cause Remanded.
Kline, P.J., concurs in judgment and opinion.
Abele, J., dissents.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellants recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment and Opinion.
Abele, J.: Dissents.
[1] On October 31, 2001, the Ohio General Assembly enacted S.B. No. 97, which significantly changed UM/UIM coverage in Ohio. Under the S.B. No. 97 version of R.C. 3937.18, automobile liability insurers are no longer required to offer UM/UIM coverage.
[2] Moore interpreted the S.B. No. 20 version of R.C.3937.18. In this case, the H.B. 261 version applies. However, State Farm's brief does not address whether Moore applies to the H.B. 261 version of R.C. 3937.18. Therefore, we will not address the issue. Nonetheless, at least one case has appliedMoore to H.B. 261. See Bell v. Currier, Guernsey App. No. 02CA10, 2003-Ohio-3294.
[3] In Sexton v. State Farm Mut. Auto. Ins. Co. (1982),69 Ohio St.2d 431, 433 N.E.2d 555, the court allowed an insured father to recover UM/UIM benefits arising out of his daughter's death under his automobile policy, even though his policy did not list his daughter as a covered person and even though she did not live with him. In reaching its decision, the court stated that R.C. 3937.18(A) did not specifically indicate who must suffer "bodily injury."