CRABTREE et al., Appellants,

v.

21ST CENTURY INSURANCE COMPANY, Appellee.

[Cite as *Crabtree v. 21st Century Ins. Co.*, 176 Ohio App.3d 507, 2008-Ohio-3335.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 06CA2945.

Decided April 4, 2008.

508

Thomas M. Spetnagel and Paige J. McMahon, for appellants.

Reminger & Reminger Co., L.P.A., and Douglas L. Holthus, for appellee.

HARSHA, Judge.

{¶ 1} John and Deidra Crabtree appeal the Ross County Common Pleas Court's summary judgment in favor of 21st Century Insurance Company.  Mr. Crabtree suffered bodily injuries while operating a motorcycle that was not listed in the policy that 21st Century issued to Mrs. Crabtree.  In this appeal, the Crabtrees argue that the policy's definition of "insured auto" for purposes of its "other owned auto" exclusion is ambiguous and does not apply to two-wheel motor vehicles, i.e., motorcycles.  However, we do not reach the issue concerning the scope of the other-owned-auto exclusion because Mr. Crabtree does not qualify for uninsured- or underinsured-motorist ("UM") coverage under the endorsement's definition of a "person insured."  In the absence of coverage, there is no need to look to exclusions from it.

{¶ 2} They also argue that the policy provides UM coverage for Mrs. Crabtree's derivative loss-of-consortium claim because the UM endorsement's exclusions only apply to "bodily injury" claims.  However, the clear and unambiguous language of the policy requires "bodily injury sustained by a person insured" in order for UM coverage to arise, i.e., it limits coverage to accidents in which a "person insured" personally sustains bodily injury.  Mrs. Crabtree did not personally sustain bodily injury, and Mr. Crabtree is not a "person insured."  Because UM coverage is limited to damages that arise because of bodily injury

sustained by a "person insured," Mrs. Crabtree is not entitled to UM coverage for her loss-of-consortium claim. Accordingly, we affirm the trial court's judgment.

## I. Facts

{¶ 3} The parties do not dispute the underlying facts. In July 2005, John Crabtree suffered injuries while operating his motorcycle as a result of an accident caused by an unidentified motorist. His wife, Deidra Crabtree, was not involved in the accident.

{¶ 4} At the time of the accident, Mrs. Crabtree carried a 21st Century automobile insurance policy that provided UM coverage in the amount of $100,000 per person and $300,000 per accident. The policy identified two vehicles: a 1999 Chevy Tahoe and a 1995 Dodge Ram 1500. The policy did not list the 1990 Harley–Davidson motorcycle Mr. Crabtree was operating at the time of the accident. Mr. Crabtree had purchased a separate insurance policy with another insurance company to cover the motorcycle.

{¶ 5} After the Crabtrees sought UM coverage under the 21st Century policy, the company denied coverage. According to 21st Century, Mr. Crabtree does not meet the definition of a "person insured" under the express terms of the UM endorsement. They also contend that the other-owned-auto exclusion precludes coverage because the motorcycle that Mr. Crabtree was operating at the time of the accident was not specifically identified in the policy.

{¶ 6} The Crabtrees filed a complaint against 21st Century seeking UM coverage for Mr. Crabtree's bodily injuries and Mrs. Crabtree's loss of consortium. Both parties filed cross-motions for summary judgment. The trial court denied the Crabtrees' motion and granted 21st Century's motion, finding that Mr. Crabtree was not a "person insured" under the UM provision of the policy, and therefore neither Mr. Crabtree nor Mrs. Crabtree were entitled to UM coverage.

{¶ 7} The Crabtrees timely appealed and raise the following assignment of error:

The trial court erred in granting summary judgment to Defendant–Appellee, 21st Century Insurance Company.

## II. Summary Judgment Standard

{¶ 8} An appellate court independently reviews a trial court's decision to grant summary judgment. See *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same criteria as the trial court, which is the standard contained in Civ.R. 56. See *Horsley v. Essman* (2001), 145 Ohio App.3d 438, 442, 763 N.E.2d 245. Under Civ.R. 56(C), summary judgment is proper if (1)

no genuine issue as to any material fact remains to be litigated; (2) reasonable minds can come to one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. See *Grafton*.

### III. Interpretation of Insurance Contracts

{¶ 9} The interpretation of an insurance policy presents a question of law that an appellate court addresses de novo, without deference to the trial court. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. In interpreting an insurance policy, a court's role "is to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. In doing so, "[w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." (Citations omitted.) Id.

{¶ 10} However, when provisions in an insurance contract "are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus; see also *Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 13. This " 'rule will not be applied so as to provide an unreasonable interpretation of the words of the policy.' " Id. at ¶ 14, quoting *Morfoot v. Stake* (1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus.

{¶ 11} A clear, unambiguous underinsured-motorist-coverage provision is valid and enforceable as long as the provision is not "contrary to the coverage mandated by R.C. 3937.18(A)." *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 28–29, 723 N.E.2d 97. Provisions in an automobile liability insurance policy that vary from statutory requirements are unenforceable. *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 287, 695 N.E.2d 732.

{¶ 12} Under the current version of R.C. 3937.18, an insurer "may, but is not required to," include uninsured-motorist coverage or underinsured-motorist coverage, or both, in a motor vehicle policy. See R.C. 3937.18(A). Additionally, policies with uninsured-motorist coverage may limit or exclude coverage under circumstances that are specified in the policy even if those circumstances are not also specified in the statute. See R.C. 3937.18(I); see also *Snyder v. Am. Family*

*Ins. Co.*, 114 Ohio St.3d 239, 2007-Ohio-4004, 871 N.E.2d 574, ¶ 14–15. Specifically, R.C. 3937.18(I) provides:

> Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under specified circumstances, including but not limited to any of the following circumstances:
>
> (1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages are provided;
>
> \* \* \*
>
> (5) When the person actually suffering the bodily injury, sickness, disease, or death is not an insured under the policy.

{¶ 13} The parties agree that under the current version of R.C. 3937.18, insurers may exclude UM coverage for losses sustained while the insured is occupying an "other owned auto" and may limit UM coverage to automobile accidents in which an insured personally sustained bodily injury. They further agree that 21st Century could have included these restrictions in the policy issued to Mrs. Crabtree. However, the Crabtrees contend that the policy is ambiguous and must be construed in their favor.

### IV. Mr. Crabtree's Claim for Coverage

{¶ 14} The Crabtrees focus upon the language of the "other owned auto" exclusion found in section (i) of the UM endorsement and argue that it does not bar coverage because of ambiguities in the type of vehicles to which it applies. Under their interpretation of the policy, that exclusion only applies to "4 wheel land motor vehicles," i.e., car, trucks, vans, etc., but not two-wheel vehicles, i.e., motorcycles. However, like the trial court, we believe the analysis must start with the nature of the coverage under the UM endorsement before we analyze any exclusions from it.

{¶ 15} Part III of the policy, titled "Uninsured and underinsured motorist," provides the terms and definitions of the policy's UM coverage. It begins with "OUR PROMISE TO YOU—BODILY INJURY PROTECTION," and states:

> **We** will pay damages which a **person** insured shall be legally entitled to recover from an **uninsured motorist** because of **bodily injury** sustained by a

**person** insured caused by **accident** and arising out of the ownership, maintenance or **use** of an **uninsured motor vehicle**.

{¶ 16} The policy's UM endorsement next defines a "person insured" as being:

(a) **you**, while **occupying** an **insured auto**, an **additional insured motor vehicle** or, while not **occupying** a **motor vehicle**, when struck by a **motor vehicle**;

(b) a **relative** while **occupying** an **insured auto**, an **additional insured motor vehicle** or, while not **occupying** a **motor vehicle**, when struck by a motor vehicle;

(c) Any **person occupying** an **insured auto** while operated by **you** or any other **person** with **your** permission and any **person occupying** an **additional insured motor vehicle** while operated by you.

(Emphasis sic.)

{¶ 17} The policy also limits the meaning of an "insured auto" and an "additional insured auto" to the definitions as they are "defined in this part," i.e., the UM endorsement. An "insured auto" means "an auto described in the declarations" and "an auto not owned by you while temporarily used, with permission of the owner, as a substitute for any auto insured under this section * * *." There are two other types of insured autos, but neither is relevant here. An "additional insured motor vehicle" means "an auto not owned nor available for regular use by you, a relative, or a resident of the same household in which you reside, used with the permission of the owner." The term "auto" is defined in the policy's general definition section as "a 4 wheel land motor vehicle * * *."

■ {¶ 18} The clear and unambiguous language of the policy provides UM coverage only to those who are "persons insured." Mr. Crabtree satisfies part of that definition because "you" includes the named insured (Mrs. Crabtree) and her spouse (Mr. Crabtree). However, he was not occupying an "insured auto" or an "additional insured motor vehicle" when he was injured. As the trial court pointed out, Mr. Crabtree was not in an "insured auto" because his motorcycle was not listed on the declarations page; also, his two-wheel motorcycle does not qualify as an "auto," which is defined in part as "a 4 wheel land motor vehicle." Nor was he occupying an "additional insured motor vehicle" because not only does the motorcycle not qualify as an "auto," he owned the motorcycle rather than used it temporarily with the permission of owner. Mr. Crabtree is not a "person insured" and therefore does not qualify for coverage under the UM endorsement. " 'It is perfectly within the province of an insurance provider to define who will be an insured.' " *Keffer v. Cent. Mut. Ins. Co.*, 4th Dist. No. 06CA652, 2007-Ohio-3984, 2007 WL 2231015, ¶ 12, quoting *Shepherd v. Scott*, 3rd Dist. No. 5–02–22, 2002-Ohio-4417, 2002 WL 1998095, citing *Holliman v. Allstate*

*Ins. Co. Corp.* (1999), 86 Ohio St.3d 414, 715 N.E.2d 532. " 'Nothing in R.C. 3937.18 * * * prohibits the parties to an insurance contract from defining who is an insured person under the policy.' " *Keffer v. Cent. Mut. Ins. Co.* at ¶ 12, quoting *Holliman*, 86 Ohio St.3d at 416–417, 715 N.E.2d 532; see also *Lightning Rod Mut. Ins. Co. v. Grange Mut. Cas. Co.*, 168 Ohio App.3d 505, 2006-Ohio-4411, 860 N.E.2d 1049, ¶ 12; *Safeco Ins. Co. of Illinois v. Motorists Mut. Ins. Co.*, 8th Dist. No. 86124, 2006-Ohio-2063, 2006 WL 1109770, ¶ 13; *Mitchell v. Motorists Mut. Ins. Co.*, 10th Dist. No. 04AP–589, 2005-Ohio-3988, 2005 WL 1840020, ¶ 21 (noting that because "R.C. 3937.18 does not mandate who must be an insured for purposes of underinsured motorists coverage, the parties to an insurance policy are free to draft their own restrictions regarding who is and is not an insured"). Having determined that there is no coverage under the definitional portion of the endorsement, we need not analyze the other-owned-auto exclusion.

### V.   Loss–of–Consortium Claim

{¶ 19} Next, we must determine whether Mrs. Crabtree's claim for loss of consortium is covered under the language of the policy. Because Ohio recognizes claims for loss of consortium, Mrs. Crabtree as a named insured would be "legally entitled to recover" from an uninsured motorist. The parties agree that under the current version of R.C. 3937.18, insurers are permitted to restrict UM coverage to situations in which an insured suffers bodily injury. See R.C. 3937.18(I)(5).

{¶ 20} The UM-coverage endorsement specifically obligates 21st Century to "pay damages which a person insured shall be legally entitled to recover from an uninsured motorist *because of bodily injury sustained by a 'person insured.'* " (Emphasis added.) Thus, the clear and unambiguous language of the UM endorsement requires that bodily injury be sustained by a "person insured" in order for UM coverage to arise. Mrs. Crabtree does not fall within the definition of "person insured" because she was not occupying an "insured auto" or an "additional insured motor vehicle" at the time of the accident. Even if we assume that Mrs. Crabtree, as a named insured, is a "person insured," it is undisputed that she did not personally suffer bodily injury. And as we have previously determined, Mr. Crabtree is not a "person insured" under the UM portion of the policy.

{¶ 21} The Crabtrees contend that the UM-coverage endorsement and its exclusions do not clearly and unambiguously preclude Mrs. Crabtree's loss-of-consortium claim because they only apply to "bodily injury" claims. In support of their position, they rely on *Brunn v. Motorists Mut. Ins. Co.*, 5th Dist. No. 2005CA0022, 2006-Ohio-33, 2006 WL 29116, and *Estate of Monnig v. Progressive Ins. Co.*, 4th Dist. No. 03CA9, 2004-Ohio-2028, 2004 WL 869269. As 21st Century

correctly points out, however, *Brunn* and *Monnig* are inapposite because they both involved ambiguous "other owned auto" exclusions, whereas in the present case definitions in the UM-coverage endorsement expressly preclude coverage. Unlike the "other owned auto" exclusions at issue in these cases, however, the UM endorsement in the present case clearly requires that a "person insured" sustain bodily injury in order for UM coverage to arise. Accordingly, we need not address the "other owned auto" exclusion here either.

{¶ 22} The Crabtrees also refer us to *Willett v. GEICO Gen. Ins. Co.*, 10th Dist. No. 05AP1264, 2006-Ohio-3957, 2006 WL 2170682. Again, we agree with 21st Century that *Willett* is factually distinguishable. In *Willett*, the UM-coverage endorsement provided: "[W]e will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle or hit-and-run motor vehicle arising out of the ownership, maintenance or use of that auto." *Willett* at ¶ 9. The court determined that this language did not state that the insured must be the one who suffered the bodily injury; rather the policy only required the insured to be legally entitled to collect damages (including mental suffering) for what could be someone else's bodily injury. Id. at ¶ 11. Thus, the court concluded that the policy did not clearly and unambiguously restrict UM claims to bodily injuries of insured persons. Id. at ¶ 13. In contrast, the policy in this case clearly limits UM coverage to situations where a "person insured" suffers bodily injury.

{¶ 23} Because the clear and unambiguous language of the policy limits UM coverage to situations in which a "person insured" sustains "bodily injury," Mrs. Crabtree is not entitled to UM coverage for her loss-of-consortium claim.

{¶ 24} Accordingly, we affirm the trial court's judgment.

Judgment affirmed.

KLINE and MCFARLAND, JJ., concur.