

ATTORNEY FOR APPELLANT

Jennifer E. Davis
Garan Lucow Miller, PC
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Charles P. Rice
Patrick D. Murphy
Murphy Rice, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Grange Mutual Casualty Co., Mark Madejek, and Alice Blaisdell,[1] | February 28, 2018 |
| *Appellant-Defendants,* | Court of Appeals Case No. 71A05-1708-CT-1720 |
| v. | Appeal from the St. Joseph Circuit Court |
| Estate of Stephen P. Stetz, by Jeffrey and Dana Stetz, Personal Representatives, | The Honorable John E. Broden, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 71C01-1511-CT-420 |

**Kirsch, Judge.**

---

[1] Although Mark Madejek and Alice Blaisdell are not parties to this appeal, we include them in the caption pursuant to Indiana Appellate Rule 17(A), providing that "[a] party of record in the trial court . . . shall be a party on appeal."

[1] Jeffrey and Dana Stetz, as Personal Representatives for the Estate of Stephen P. Stetz (together, "the Estate") filed suit against Grange Mutual Casualty Co. ("Grange") seeking coverage for their deceased son, Stephen P. Stetz ("Stephen"), who died from injuries he sustained after being hit, while a pedestrian, by an uninsured motorist. The Estate and Grange each filed a motion for summary judgment, and, after a hearing, the trial court granted the Estate's motion, finding that Grange was liable for coverage. Grange appeals and raises the following restated issued: whether the trial court properly found that Stephen was a covered family member under his parents' automobile policy and granted summary judgment in favor of the Estate and against Grange.

[2] We affirm.

## Facts and Procedural History

[3] Jeffrey and Dana Stetz ("Parents") are residents of Uniontown, Ohio. Stephen was born in 1988 in Michigan, and when he was six or seven years old, the family moved to Uniontown. Stephen graduated from high school in nearby Akron, Ohio, and he thereafter attended Holy Cross College in South Bend, Indiana, graduating in 2012. After college, Stephen moved back to Parents' home in Uniontown and obtained a job with North American Breweries, where he had an assigned sales territory in nearby Kent, Ohio. He lived and worked out of Parents' home. In April or May 2014, Stephen obtained and began a new sales job with Chicago Beverage, headquartered in Chicago, Illinois. He signed a one-year lease on an apartment in the Lincoln Park area of Chicago,

and when that expired, he signed a lease and moved to another apartment in the Chicago area.

[4] In August 2015, Parents renewed their Personal Auto Policy *Ohio* ("the Policy") with Grange, for the period of August 26, 2015 to February 26, 2016. *Appellant's App Vol. II* at 82. The Declarations page identifies the Policy as a Family Auto policy type and identifies the named insured and address as: Jeffrey Stetz and Dana Stetz of "1889 White Chapel Cir NW Uniontown OH 44685." *Id*. The Policy listed and covered five vehicles, including a 2004 Honda Civic and a 2008 Honda Civic, and all five of the vehicles were owned by Parents, were registered in Ohio, and had Ohio license plates. The Policy's Rating Information Page listed four drivers, namely Jeffrey, Dana, Stephen, and his older sister. *Id*. at 87. Stephen began driving the 2004 Civic when he was a senior in high school and continued driving it other than when it was being repaired, when he drove the 2008 Civic. Stephen did not own his own vehicle.

[5] With regard to uninsured motorists coverage, the Policy provides in relevant part:

> **PART C – UNINSURED MOTORISTS COVERAGE**
> **(Includes Underinsured Motorists Coverage)**
>
> **Insuring Agreement**

A. **We** will pay damages which an **insured** is legally entitled to recover from the owner or operator of **an uninsured motor vehicle** because of:

> 1. **Bodily Injury** sustained by the **insured** and caused by an accident; and

> 2. **Property damage** . . .

The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **uninsured motor vehicle**. . . .

B. **"Insured"** as used in this Part means:

> 1. **You** or any **family member**.

> 2. Any **family member** who does not own a motor vehicle.

> 3. Any other person **while occupying your covered auto** with a reasonable belief that that person is entitled to do so, if that person is not insured for Uninsured Motorists Coverage under another policy.

*Id.* at 105. The Policy excludes uninsured coverage as follows:

**Exclusions**

A. **We** do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any person.

. . .

> 6. When the person actually suffering the **bodily injury**, sickness, disease, or death is not an **insured** under the policy.

*Id.* at 106. The Policy provides the following relevant definitions:

**DEFINITIONS**

> A. The terms defined below appear in bold type throughout this policy. **You** and **Your** refer to the named insured, which includes the individual named on the Declarations page or that person's spouse if a resident of the same household. . . .
>
> B. **"We"**, **"us"** and **"our"** refer to Grange Mutual Casualty Company.
>
> . . . .
>
> F. **"Family member"** means a person related to **you** by blood, marriage or adoption and whose principal residence is at the location shown in the Declarations. If a court has adjudicated that one parent is the custodial parent, that adjudication shall be conclusive with respect to the minor child's principal residence.

*Id.* at 97 (bold in original; emphasis added with underlining). The Policy does not define the words "principal" or "residence."

[6] On October 15, 2015, Stephen was in South Bend, and, as a pedestrian, he was struck by a vehicle driven by Mark Madejek ("Madejek"). Madejek was operating a vehicle owned by his mother, Alice Blaisdell ("Blaisdell"). Stephen died from his injuries on October 23, 2015. Madejek was uninsured, and

Blaisdell did not have any insurance that applied to the vehicle Madejek was driving.

[7] Following his death, Parents opened an estate in the St. Joseph County probate court for the administration of the Estate.[2] On November 20, 2015, the Estate filed suit in the St. Joseph Circuit Court against Madejek and Blaisdell for the wrongful death of Stephen, and it amended the complaint in February 2016 to add Grange as a defendant, seeking uninsured motorists coverage.[3] *Id.* at 16-20. More specifically, the Estate's Complaint alleged that Stephen was an insured family member under the Policy. Grange's Answer maintained that Stephen's principal residence was in Chicago, Illinois at the time of his death, and, therefore, he did not meet the definition of insured family member under the Policy and was not entitled to uninsured motorists coverage. *Id.* at 22-32.

[8] On August 24, 2016, the Estate filed its motion for summary judgment, arguing that Stephen was entitled to uninsured motorists coverage as a family member under the Policy. *Id.* at 38. The Estate designated evidence that Stephen, while in Chicago, drove a parent-owned car, which had Ohio license plates, he had an Ohio driver's license with the Uniontown address, he had a key to the Uniontown house, and a garage door opener, he received some mail at the

---

[2] Steven was single, never having been married.

[3] The Estate's claim against Madejek and Blaisdell asserted negligence and intentional tort. In January 2016, the trial court entered a default judgment against Madejek and Blaisdell. That same month, Madejek pled guilty to felony charges of leaving the scene of an accident resulting in death of another person and driving while suspended resulting in death of another person.

Uniontown address, and he was registered to vote, and did vote, in Ohio. The designated evidence also showed that Stephen would visit "fairly often," for holidays, vacations, to visit friends, with at most a stretch of a month or two of not coming back to Parents' home, and he did not bring a duffel or suitcase with him when he came back because "he had everything that he needed," including clothes, toiletries, and the like, and usually only brought things like his computer, coat, and gloves. *Appellant*'s *App. Vol. II* at 217, 221. He kept his local Key Bank account in Uniontown, and he did not do banking in Chicago, other than visits to an ATM. Parents still provided some financial support to Stephen for the period of time that he was in Chicago, as Mother co-signed on his two Chicago apartment leases, Parents paid his first and last month's rent and the security deposits, and they bought furnishings for his apartments, and Stephen remained at all times on the family's cell phone plan. He also continued to work with his accountant in Akron, Ohio and with his financial planner in Cuyahoga Falls, Ohio. In September 2015, Stephen was treated in Ohio by his long-time family doctor, and, while in Chicago, Stephen also continued to be under the care of his dentist in Ohio and his eye doctor in Ohio. Stephen told his mother and a long-time friend, Amy, of his plan and intent to return to the Stetz family home in Ohio after his work assignment in Chicago. A few weeks before he died, Stephen was at the Uniontown home and told his mother that he was considering leaving his job at Chicago Beverage and said, "I think I might want to come home." *Id.* at 141. Stephen did not submit any change of address notification form that would forward his mail from Uniontown to Chicago. *Id.* at 143.

On February 27, 2017, Grange filed a Combined Response that (1) opposed the Estate's motion and (2) supported its own cross-motion for Summary Judgment. Grange did not assert that any material issue of fact precluded summary judgment for the Estate. Rather, Grange asserted that no genuine issue of material fact precluded summary judgment in its favor. *Id.* at 62, 64, 79. Grange's position was that Stephen maintained his "principal residence" in Chicago and was, therefore, not an insured and was excluded from coverage under the Policy. Grange designated evidence showing: Stephen was a college graduate; he had a full-time job in Chicago since April or May 2014 and was past the probationary period; he had an apartment in Chicago and was part-way through his second one-year lease; many of his bills, including utility bills, were mailed to his Chicago address; he paid his own rent and utilities; he saw a doctor in the Chicago area for a medical issue; and his obituary stated that he was living in Chicago at the time of his death, as did his Facebook page.

After the Estate filed a reply and supplemental designation of evidence, the trial court held a hearing on the cross-motions for summary judgment on May 1, 2017. The trial court issued an order ("Order") on May 25, 2017.[4] In it, the trial court observed:

---

[4] The trial court's Order noted, "The legal issue before the Court was exceptionally well briefed and succinctly stated by the parties[.]" *Appellant's App. Vol. II* at 9. We agree with the trial court in that regard, both as to briefing at the trial court level and, here, on appeal.

It is clear to the Court that Stephen was "living" in Chicago at the time of his death. However, the language in the insurance policy in question does not reference where one is "living", but rather the insurance policy employs the words "principal residence". The word "residence" has always envisioned a great deal more than where one finds themselves living at any snapshot in time and its definition has vexed many courts, election boards, and auditor's officers in making such determinations. Whether it be the graduate student, the Peace Corps volunteer, military personnel, or, in Stephen's case, the young adult who is branching out on his own but certainly has yet to attain full independence, many people find themselves living in a particular physical place but they still maintain a primary or principal residence somewhere else, typically the place where they are from and intend to return.

*Id*. at 12. The trial court opined that Stephen's situation "much more resembled a graduate student away at school than he did someone who has fully moved and relocated to a new city leaving his childhood home behind[,]" *id*. at 13, and it ultimately determined that Stephen was a principal resident of Parents' home in Uniontown, Ohio and was entitled to coverage under the Policy's uninsured motorists coverage. In reaching its decision, the court also considered the following:

Because Grange Insurance chose not to define the words "principal residence" in the Stetz' family auto insurance policy, the term is implicitly ambiguous and capable of multiple different interpretations. Because of this ambiguity, under Ohio law, the language is to be strictly construed against Grange and liberally construed in favor of coverage for [the Estate]. [The Estate] correctly points out the word residence has no fixed meaning under Ohio law. Further, adding the modifier "principal" in front of residence does not resolve the ambiguity. [The Estate]

> correctly points out the Black Law Dictionary definition of
> "principal" contains multiple definitions and these varying
> definitions are not all synonymous with each other.

*Id.* at 14.  The trial court granted the Estate's motion and denied Grange's motion.  Thereafter, the Estate, with the agreement of Grange, filed an Indiana Trial Rule 54(B) Motion for Entry of Final Appealable Judgment as to the Order, which the trial court granted.  *Id.* at 7, 228.  Grange now appeals.

## Discussion and Decision

[11]    When reviewing the grant of a summary judgment motion, we apply the same standard applicable to the trial court.  Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Ind. Trial Rule 56(C).  We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party.  *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009).  If there are no genuine issues of material fact, we will affirm a summary judgment on any legal theory supported by the record.  *Matteson v. Citizens Ins. Co. of Am.*, 844 N.E.2d 188, 192 (Ind. Ct. App. 2006).

[12]    The parties agree that Ohio substantive law controls.[5]  *Appellant's Br*. at 12; *Reply Br*. at 6; *Appellee's Br*. at 19.  Under Ohio law, "The interpretation of an

---

[5] Grange is an Ohio corporation with its "Home Office" in Columbus, Ohio.  *Appellee's App. Vol. II* at 54. Parents are residents of Ohio, and they procured the Policy through an Ohio agency.  The five vehicles listed in the Policy were registered in Ohio.  The Policy is titled "Personal Auto Policy *Ohio*."  *Id*. at 23.

automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court." *Wetzel v. Auto-Owners Ins. Co.*, 60 N.E.3d 27, 29 (Ohio Ct. App. 2016), *discretionary appeal not allowed*. In construing terms of an insurance policy, the Ohio Supreme Court has explained:

> When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.

*Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 33-34 (Ohio 2007) (citations and quotations omitted). As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Id*. at 34. However, where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. *Wetzel*, 60 N.E.3d at 29. That is, in cases of ambiguities, policy terms will be construed in favor of coverage. *Fahlbush v. Crum-Jones*, 891 N.E.2d 1242, 1246 (Ohio Ct. App. 2008). This rule, however, will not be applied so as to provide an unreasonable interpretation of the words of the policy. *Cincinnati Ins. Co.*, 875 N.E.2d at 34. Ambiguous words will be construed in favor of coverage "with greater force to language that purports to

limit or to qualify coverage." *Auto-Owners Ins. Co. v. Merillat*, 854 N.E.2d 513, 518 (Ohio Ct. App. 2006) (quotations omitted).

[13] In the present case, the relevant facts are not in dispute. Rather, the disagreement is whether Stephen was a "family member" under the terms of the Policy. The clause at issue provides, in relevant part:

> F. **"Family member"** means a person related to **you** by blood, marriage or adoption and <u>whose principal residence is at the location shown in the Declarations</u>.

*Appellant's App*. *Vol. II* at 97 (underlining added). The location "shown in the Declarations" was the Uniontown Stetz home address. Thus, to determine the existence or non-existence of coverage, the inquiry is whether Stephen's "principal residence" at the time of his death was in Chicago or was in Uniontown.

[14] Grange argues on appeal that the trial court erred when it granted summary judgment for the Estate because Stephen's "principal residence" was in Chicago and not at Parents' Uniontown address. Grange urges that the relevant point in time is where Stephen was living at the time that he died, not where he was living before that point in time or where he planned to live at some later date. Grange urges that the designated evidence shows that, at the time of his passing, Stephen was living, working, and supporting himself in Chicago, first living in one apartment for a year, and then in another for part of a year, until the fatal accident. Thus, argues Grange, although Stephen was certainly

welcome at his Parents' Uniontown home, his principal residence was his own dwelling in Chicago. The Estate maintains that the trial court's decision, determining that the Estate was entitled to uninsured motorists coverage, was correct for a number of reasons, including that the term "principal residence" was ambiguous, such that the Policy should be construed against Grange. We agree with the Estate.[6]

[15] Here, the Policy does not define "residence," nor does it define "principal."[7] We acknowledge that the failure to define a term in an insurance policy does not automatically render the policy ambiguous. *Fahlbush*, 891 N.E.2d at 1246. A court must give undefined words used in an insurance contract their plain and ordinary meaning. *Collins v. Auto-Owners Ins. Co.*, 80 N.E.3d 542, 548 (Ohio Ct. App. 2017). However, provisions that are "reasonably susceptible of more than one interpretation" are ambiguous and "will be construed strictly against the insurer and liberally in favor of the insured." *Crabtree v. 21st Century Ins. Co.*, 892 N.E.2d 925, 928 (Ohio Ct. App. 2008). When a word is undefined, Ohio courts have directed that "we examine the common meaning

---

[6] The Estate also argues that the trial court's decision was correct because (1) the undisputed facts establish that Stephen's principal residence was in Uniontown, and (2) the premium charged was based in part on the number of rated drivers listed on the Policy's "Rating Information Page" and Stephen was a "rated driver." Because we find the ambiguity issue dispositive, we do not reach the other proffered arguments.

[7] *Compare Allstate Ins. Co. v. Eyster*, 939 N.E.2d 1274, 1276 (Ohio Ct. App. 2010) (where policy defines "Resident" as "a person who physically resides in your household with the intention to continue residence there. . . . Your unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in your household.").

of the word and Ohio case law involving the language at issue." *Merillat*, 854 N.E.2d at 517.

[16] With regard to the first undefined term, "principal," the Ohio Supreme Court, in *State ex rel. Kilburn v. Industrial Commission of Ohio*, 438 N.E.2d 422, 423 (Ohio 1982), a worker's compensation case, addressed the terms "principal business[,]" namely whether an employer's "principal business" consisted of building and demolition work. In reaching its decision that the employer's principal business was to supply water, and not to engage in building work, the *Kilburn* Court considered the definitions of "principal" found in Webster's Third New International Dictionary and in Black's Law Dictionary. *Id*. Webster's defined "principal" as "most important, consequential, or influential" and Black's Law Dictionary defined it as "[c]hief; leading; most important or considerable; primary; original." *Id*.

[17] Ohio courts have held the term "resident" has "no fixed meaning in the law." *See Merillat*, 854 N.E.2d at 518 (stating "the term 'resident' has no fixed meaning in the law"); *Entenman v. Auto-Owners Ins. Co.*, 737 N.E.2d 119, 124 (Ohio Ct. App. 2000) ("The term 'resident' is not defined in the Auto-Owners insurance policy and has no fixed meaning in the law."). The Estate urges that the appellate decision of *Prudential Property & Casualty Insurance Co. v. Koby*, 705 N.E.2d 748 (Ohio Ct. App. 1997), *discretionary appeal not allowed*, is particularly relevant and applicable. We agree.

[18]    In *Koby*, Edgar Koby Jr. ("Koby") was a 32-year-old captain in the Army, stationed in Texas. *Id*. at 749. While visiting his parents' home in Ohio, Koby was target shooting in his parents' backyard, and he accidentally struck and injured another man, who filed suit against Koby and his parents. His parents' Prudential homeowner's policy provided coverage for the insured and "residents of your household." *Id*. Prudential asserted that it had no duty to defend because Koby was not a resident in the household of his parents, but instead, "has his own residence in Texas, where he is stationed." *Id*. The trial court entered summary judgment for Koby and against Prudential, and Prudential appealed.

[19]    The Ohio court of appeals ultimately affirmed the trial court's grant of summary judgment for Koby, and, in analyzing the issue, the court initially observed that the term "resident" was not defined in the Prudential insurance contract. *Id*. The *Koby* court examined Black's Law Dictionary's definition: "a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration." *Id*. at 750. The court next examined Ohio case law and stated:

> The words "resident," "residence" and "residing" have no
> precise, technical and fixed meaning applicable to all cases.
> "Residence" has many shades of meaning, from mere temporary
> presence to the most permanent abode. It is difficult to give an
> exact or even satisfactory definition of the term "resident," as the
> term is flexible, elastic, slippery and somewhat ambiguous. * * *
> Definitions of "residence" include "a place of abode for more
> than a temporary period of time" and "a permanent and
> established home" and the definitions range between these two

> extremes. This being the case, our courts have held that such terms should be given the broadest construction and that all who may be included, by any reasonable construction of such terms, within the coverage of an insurance policy using such terms, should be given its protection.

*Id*. at 750 (internal citation omitted). The *Koby* court opined, "The factual pattern of the case plays a significant role in determining whether one is a resident of a household." *Id*. at 751. The *Koby* court recognized that Koby had a residence in Texas, was thirty-two, and was self-supporting, but also recognized that Koby regularly made visits to his parents' home, and had other connections to his parents' household, including his Ohio driver's license, Ohio voting record, and his expressed intention to return to his parents' home or area after his enlistment term was completed. Given this fact scenario, the *Koby* court found that Ohio's dual residency rule was applicable. *Id*. at 752-53. After analyzing case authorities, "and construing the term 'resident' liberally and in favor of the insured," the *Koby* court held that Koby qualified as a "resident" of his parents' household for purposes of the Prudential policy. *Id*. at 753.

[20] As stated, a contract is unambiguous as a matter of law if it can be given a definite legal meaning. *Cincinnati Ins. Co.*, 875 N.E.2d at 34. However, as the *Koby* court observed, the term residence has "shades of meaning" ranging from "a place of abode for more than a temporary period of time" to "a permanent and established home[.]" *Id*. at 750. Principal may mean "primary," as Grange suggests, but it may also mean "most important, consequential, or influential" or "original." *Id*. Accordingly, we find that the words principal residence

cannot be given "a definite legal meaning." *Id*. Rather, the Policy's undefined terms "principal residence" are reasonably susceptible to more than one interpretation, are ambiguous, and therefore must be construed against Grange and liberally in favor of coverage.[8] The trial court did not err in finding that Stephen was a family member under the Policy and in granting summary judgment for the Estate and against Grange.

Affirmed.

Bailey, J., and Pyle, J., concur.

---

[8] Even if we were to find that the language was not ambiguous, we find that the designated evidence demonstrates that Stephen's principal residence was at the Uniontown address and that the Estate was entitled to summary judgment. "[T]he fact pattern of a particular case plays a significant role in determining whether an individual is a resident of a household," and "Ohio courts usually examine several factors including 'the amount of time the person spends at the household, the person's age, the person's intent, and whether the insured is 'legally obligated' to the person.'" *Martin v. Wandling*, 65 N.E.3d 103, 126 (Ohio Ct. App. 2016) (quoting *Prudential Property & Cas. Co. v. Koby,* 705 N.E.2d 748, 750-751 (1997)). Here, Stephen had been in Chicago for less than two years, Parents were continuing to help him financially, by co-signing for and furnishing his apartments, as well as providing him with a cell phone and a vehicle to drive, and Stephen had told his mother and a friend not long before he died of his intention to find a job and move back to Uniontown. Additionally, he visited Parents' home with regularity, not going more than a month or two without coming back, and kept clothing and toiletries at the residence. He also did not change his driver's license or voter registration from Ohio to Illinois.